# Richmond

B. H. BAILEY V. MARGARET FORE, ADMRX.

November 15, 1934.

Present, Campbell, C. J., and Holt, Epes, Gregory and Browning, JJ.

The opinion states the case.

*Sinnott & May* and *J. A. Gobel,* for the plaintiff in error.

*J. M. Turner, Thomas A. Williams* and *L. C. O'Connor,* for the defendant in error.

BROWNING, J., delivered the opinion of the court.

Plaintiff's decedent, William B. Fore, was killed by the automobile of B. H. Bailey, the plaintiff in error, in the manner hereinafter described. His administratrix recovered a judgment confirmed by the court. The defendant was granted a writ of error by this court.

Fore, the deceased, was living, at the time of his death, on Church Hill, in the city of Richmond, Virginia, at 2903 East Clay street. He was employed, on the day of the accident, and for some eighteen years prior thereto, at the

Richmond Cedar Works. The accident happened at about eleven o'clock P. M. on November 23, 1931.

B. H. Bailey, the defendant in the trial court, is a physician, residing and practicing, at the time, in the village of Sandston, situated some eight miles from the city along the Williamsburg highway. On the night in question he was taking Mrs. Schultz, a patient, from her home on the Charles City road to the Johnston-Willis hospital in the city. He was driving a Chevrolet coupe. His route as he approached the city lay along what is known as the Government road into Broad street and thence over the street west, alongside, on the west, of Chimborazo park. The park ends, at Thirty-second street, which is a lateral way, intersecting Broad street at right angles on the north, but widening at the south by reason of the conformation of the park at that point. At a point twenty-nine feet from the house line on the west side of Thirty-second street to the west, on Broad street, is the word "SLOW," written or painted in large white letters, which occupies a north and south space of six and one-half feet. This is a warning sign to motorists, occasioned by the presence of a school in the vicinity. This school is, however, not operated at night.

The impact between the deceased's body and the defendant's car took place somewhere between the "Slow" sign and the marginal lines of the western sidewalk of Thirty-second street where such lines would cross Broad street were they prolonged to indicate where pedestrians should cross, and enjoy such protection as the possession of the right of way, over vehicular traffic, would afford them.

After the impact the deceased's body was lying across or at the bottom of the letter "W" in the word "Slow." It was in a somewhat crumpled position with the face toward the west side of Broad street. There was a cut from the point of the right shoulder to the neck, a severe skull fracture and a cut in the left eyebrow. His clothes were badly torn and his left shoe was not found. Underneath his body was a pint bottle containing about an ounce of whiskey.

The deceased was not killed instantly but died at the

Memorial hospital very soon after the accident. Two physicians who examined the body at the hospital detected whiskey on his breath and one of them removed material from his stomach which smelled of whiskey.

There were only two eyewitnesses to the accident. These were the operator of the automobile, Dr. Bailey, and Mrs. Schultz, his patient, who was riding with him. They both testified that the speed of the automobile was twenty-five or less miles per hour, the former saying that he took his foot off the accelerator when he reached Thirty-second street which he thought reduced his speed by five miles per hour. This testimony as to the speed of the machine was uncontradicted unless contradiction be found in attendant circumstances. These circumstances might be deduced from the reckoned force of the impact and the distance made by the car after the impact before it was stopped. As to the first point a number of the witnesses who testified for the plaintiff and who were living in houses on the block, which was the scene of the happening, said that they heard the crash and fixed the volume of sound at various degrees. One of them described it as apparently a double crash. He thought one car had hit another and glanced off and hit a third car. This was the extreme testimony as to this feature of the case.

As to the second point, the distance of the car from the place of the deceased's body after the accident is variously estimated by the plaintiff's witnesses as from twenty feet to 100 feet. The latter is the extreme testimony on this point. The left front fender of the defendant's car was bent down a little. The left-hand door was broken or bent, the greater part of the glass of this door was broken. There was a small scar on the left front fender and there was a dent on the left rear fender as if a "fist or elbow had hit it." The scar on the left front fender was just to the rear of the center of the left front wheel.

The uncontradicted testimony is that Dr. Bailey was looking straight ahead as he approached the intersection of the two streets and that the cross-walk was within his

vision; that he saw no one in the act of crossing. This is likewise the testimony of Mrs. Schultz. She was looking to the front through the windshield and saw no one attempting to cross the street.

Dr. Bailey's account of the happening is told in his testimony as follows:

"Q. About how fast were you traveling?

"A. Something less than twenty-five miles per hour.

"Q. Did you cross Thirty-second street?

"A. Yes.

"Q. When you crossed Thirty-second street I will ask you whether or not you slowed your car down.

"A. I took my foot off the accelerator when I came to Thirty-second street.

"Q. And which way were you looking?

"A. Straight ahead.

"Q. Did you have a view of the cross-walk there?

"A. Yes.

"Q. State whether or not as you crossed that intersection there was anybody in the street or crossing the street.

"A. I saw no one crossing the street.

"Q. If there had been any one there could you have seen them?

"A. Yes, sir.

"Q. Had you passed over the intersection when the accident happened?

"A. Yes.

"Q. About how far?

"A. I should say from twenty to twenty-five feet.

"Q. What was the first notice you had of any trouble?

"A. The impact of the left-hand side of my automobile.

"Q. What happened to the left-hand side of your automobile?

"A. I heard a crash in the left-hand side of my automobile and glass came in my face, and I threw up my hand and looked to the left to see what had happened.

"Q. Did you see Mr. Fore?

"A. I saw something, I didn't know what it was.

"Q. Before or after the crash?

"A. After.

"Q. What happened to him when the impact came?

"A. It looked to me like whatever it was dropped straight to the ground.

"Q. How much of the glass of your car was broken?

"A. From a half to two-thirds of the side-door glass.

"Q. Just prior to the accident was there any object in the path of your car?

"A. No, sir.

"Q. And the first notice you had was when this glass broke?

"A. Yes.

"Q. What did you do then?

"A. I threw up my hand when the glass broke and I put on my brakes as soon as I could, and I got out of the car and ran back to see what it was.

"Q. About how far did you go?

"A. I should say it was twenty or thirty feet.

"Q. Did you move the car over to the right?

"A. I pulled it a little to the right."

It will be noted that the above testimony is uncontradicted except inferentially with respect to the beginning of the skid marks to be referred to later. The plaintiff, to fix the accident at the crossing, stresses the testimony of Mrs. Fore and some others of the witnesses who testified that Dr. Bailey said that the accident happened at Thirty-second and Broad streets. At most this seems to us as a general description of a city location. For instance, the designated location, in distinguishment from Thirty-second and Clay streets or Thirty-second and Marshall streets or some other street. The force sought to be given this bit of testimony is weakened by that of Mr. Aurbach, a brother-in-law of the deceased, and a witness for the plaintiff who said:

"Q. Did he say where it happened?

"A. It happened around Thirty-second and Broad streets, middle of the block."

This witness went to see Dr. Bailey, when the above conversation occurred, subsequent to the accident, and he was in company with Pat Fore, a brother of the deceased, who testified that the doctor said that the accident happened at Thirty-second and Broad streets.

The testimony of Dr. Bailey which is quoted by the plaintiff's counsel as conclusive of the fact that the decedent was at the pedestrians' cross-walk when he was struck is:

"Q. You say you felt the impact?

"A. Yes, sir."

\*     \*     \*     \*     \*     \*     \*     \*

"Q. And it was after that that you began to apply your brakes?

"A. Yes, sir."

\*     \*     \*     \*     \*     \*     \*     \*

"Q. How much time elapsed between the time you felt the impact and the time you threw up your hand then applied your brakes?

"A. I should say approximately three to five seconds."

It was argued from this testimony coupled with the evidence that skid marks of the car began seventeen feet west of the house or property line of Thirty-second street that the above conclusion is establsihed.

We are not impressed with the soundness of this contention. It is conjecture which finds its disavowal in the positive testimony of the witness that when the accident happened he had passed over the intersection from twenty to thirty feet.

Of course the plaintiff must prove her case.

■ "Negligence will not be imputed or presumed, and in an action for negligent injuries the burden is on the plaintiff to prove that the defendant was negligent as alleged and that its negligence was the proximate cause of the injury complained of."

Digest of Virginia and West Virginia Reports (Michie) sec. 56, page 678. See a long list of cases appended to the text.

There is no positive and definite proof of how and why

the accident here happened.  This is true, in our opinion, as to circumstantial as well as direct evidence.  We are left to grope in the fruitless fields of conjecture and speculation.  We know that the decedent was killed by an impact with the defendant's car.  But as to just where he was, and when and how he got there we are in the dark.

Counsel for the plaintiff urges that because the defendant and his traveling companion said they were looking straight ahead, then the defendant was not keeping a proper lookout.  It must be noted that Dr. Bailey said that he had a view of the cross-walk and that no one was crossing the street.  It is within the knowledge of any one who has looked through the windshield of an automobile, straight ahead, if any appreciable distance from a way or street, that he can see the entire street and whatever sizable objects there may be upon it.  Such street, its sidewalks and the fronts of its properties are within the range of a normal person's vision.  The necessity for looking laterally is obviated when one has a clear view of the way over which he is traveling by looking ahead.

Counsel stressed the fact, which is in evidence, that it was the habit of the decedent to go home from the place of his employment by the route that would take him across Broad street at its intersection with Thirty-second street and that is persuasive of the contention that he went the same way on the night of the accident.  We gather from the evidence, that unless he notified his wife to the contrary, it was his custom to go home from work as soon as the work-day ended.  On the day in question his work ended at 7:30 P. M. or thereabouts.  Yet at 11 o'clock in the night he was somewhere on Broad street finding his way home.  It is in evidence that the foreman of the shops where he worked had never known him to be under the influence of liquor.  His wife said that he would take a drink sometimes but was never under the influence of it.  Dr. Bailey said that when he notified Mrs. Fore on the night of the accident, at her home, that her husband had been injured, she asked if he was drunk.  Mr. Lemay who accom-

panied the doctor to her home, corroborated this statement. Mrs. Fore's denial of this was not decisive. It is submitted that the influence of liquor, in any appreciable quantity, taken upon an empty stomach—he had not been home to his supper—could naturally cause a state of abandon as to one's doings at the time.

■ Dr. Bailey's statement that the small scar on the left front fender of his car was to the rear of the center of the front wheel and that there was a dent in the left rear fender is uncontradicted. The same is true as to his testimony that the scar on the left front fender was where the body first came in contact with his car. The injuries to the car brings us to the inescapable conviction that the man walked, stumbled or fell into the side of the defendant's car. We may then concede negligence upon the part of the defendant and still acquit him of liability if the plaintiff's intestate was guilty of contributory negligence. We think this is a case of contributory or concurrent negligence, if the defendant was negligent at all, of which latter there is little or no proof.

This court said, through Mr. Justice Holt, in the case of *Davis* v. *Rodgers*, 139 Va. 618, 623, 124 S. E. 408, 409:

■ "The fact that the jury had a right to consider all the circumstances in the case is stressed. This is entirely true, but the circumstances which it may consider must be of evidential value. Under the guise of considering circumstances it is not left free to roam at will. The verdict must rest on facts proven, fair inferences therefrom or circumstances having a tendency to establish the necessary facts. Where affirmative relief is asked it must affirmatively appear that the verdict rests at least on some one of these foundations."

This case we think is controlled by the principles enunciated by this court in the cases of *Meade* v. *Saunders*, 151 Va. 636, 144 S. E. 711, and *Stephen Putney Shoe Co.* v. *Ormsby's Adm'r*, 129 Va. 297, 105 S. E. 563. We will not quote the apposite portions of the opinions as it has been done so often in kindred cases appearing in our reports.

The case of *Virginia Electric and Power Co.* v. *Blunt's Adm'r,* 158 Va. 421, 163 S. E. 329, quoted from at length and relied upon by the plaintiff is not applicable. There the motorman was not keeping a lookout, at the time of the accident. He had turned his head and was looking to the rear. The plaintiff was walking over the crossing which was intended for pedestrians.

The case of *Heindl* v. *Perritt,* 158 Va. 104, 163 S. E. 93, was cited by the plaintiff. It is unlike the case in judgment for the plaintiff was on the defined walkway across the street and the liability of the defendant was fully proven by him.

The case of *Nicholson* v. *Garland,* 156 Va. 745, 158 S. E. 901, was also cited by the plaintiff. This was a case in which the accident happened within the intersection of the two streets. It was proven that the defendant's car was in the intersection first. The plaintiff's father was critically ill and he was going for a doctor. His speed was excessive. All this was fully proven and the judgment of the court, sustaining the verdict of the jury, was reversed.

In the case in judgment a number of assignments of error are predicated upon alleged erroneous instructions. In view of our conclusions outlined above it is unnecessary to deal with these assignments.

For the reasons stated, the judgment complained of will be reversed, and as it appears that all the facts were fully developed at the trial and now appear in the record, and that upon such facts the plaintiff is not entitled to recover, we here enter a final judgment for the defendant.

*Reversed.*