## Richmond

MANFORD NOSAY, AN INFANT SUING BY J. W. NOSAY, HIS NEXT FRIEND v. WARNELL OWENS, AN INFANT WHO SUED BY SADIE OWENS, HIS NEXT FRIEND.

January 21, 1952.

Record No. 3851.

Present, All the Justices.

The opinion states the case.

*Rixey & Rixey,* for the plaintiff in error.

*Ashburn, Agelasto & Sellers,* for the defendant in error.

WHITTLE, J., delivered the opinion of the court.

This case is before us upon writ of error and *supersedeas* granted Manford Nosay to a judgment rendered against him in the Circuit Court of Princess Anne county on October 2, 1950, in a case involving the injury of Warnell Owens, a six-year-old infant, in an automobile accident. The trial was had before a jury and resulted in a verdict for the plaintiff in the sum of $2,500.

There are five assignments of error which involves two questions for decision.

(1) Does the evidence show any actionable negligence on the part of the defendant proximately causing the injury complained of?

(2) Is the verdict and judgment thereon invalid, unenforceable and void for the reason that the defendant is an infant and no guardian *ad litem* was appointed for him at any time before or during the trial and before the verdict?

In dealing with the first question we must treat the case in the light of the evidence most favorable to the plaintiff. As said by Mr. Justice Gregory in *Virginia Elec., etc., Co.* v. *Blunt,* 158 Va. 421, 431, 163 S. E. 329: "Unless the judgment of the trial court is plainly wrong or without evidence to support it, this court has no power to set it aside. (Code, section 8-491.) After a verdict has been found in favor of a plaintiff we must accept as true all of the facts favorable to the plaintiff which the evidence tends to establish. * * * this court will view the case practically as on a demurrer to the evidence by the plaintiff in error."

Mindful of our holding, we quote "The Facts" as stated by plaintiff in his brief:

"Warnell Owens, the defendant in error, is a colored infant. On May 13, 1948, Warnell was injured as a result of being struck by an automobile then operated by the plaintiff in error Manford Nosay. The accident occurred during daylight hours at or

about 4:00 p. m. in front of the Oceana Colored School. At the time of the accident, the automobile driven by Manford Nosay was proceeding in an easterly direction on the right hand side of a road directly in front of the said Oceana Colored School. The plaintiff Warnell Owens was attempting to cross this road, proceeding from the north (on which side was the school and the school playground) to the south side. After the accident, the body of Warnell Owens was observed to be lying at or near the center of the aforesaid road. The Oceana Colored School sits back from the road 86.7 feet, and the space between the school and the road is open playground unobstructed by other buildings or trees. The concrete or paved portion of the road is 22 feet wide, and the land is level. Defendant admitted that the condition of the road and surrounding terrain afforded an unobstructed view from a point on the road at least 400 or 500 feet west of the school. The school had been there for 14 years, and the defendant admitted passing this location a number of times, probably twenty or twenty-five. The facts so far stated are admitted and are not in dispute. Additionally, it is conceded that some rain was falling, but the facts are in dispute as to the intensity of the rainfall.

"With reference to the degree of rain, Beatrice Gormandy testified:

" 'Q. What was the weather at that time?

" 'A. It was a slight drizzle. It had just begun, just slight, very little.

" 'Q. Was it enough to interfere with your view or your vision?

" 'A. No, it was not because some of the children were still at play. It was not enough to stop them from playing. Some of them were still out.

" 'Q. —at the time. Would you say it was raining, or more of a drizzle?

" 'A. Well, it was just slight because some of the children were still out on the yard playing at the time.

" 'Q. And how long had it been drizzling, had the water been falling?

" 'A. I think it had just recently started, because I did not know it until I did go out.'

"Christine Smith (10 years of age) testified that she was playing in the school yard and that it was not raining hard—she

stated that it was not raining so hard that you could not play. The plaintiff himself had not even noticed that it was raining, although he had been playing out of doors for some little while.

"The car operated by Manford Nosay also was occupied by three persons in addition to Nosay. They were all schoolmates of his, and all testified to the effect that the car was traveling at a speed which they estimated to be 20 to 25 miles per hour. Witness Lois Owens" (10 years of age), "who was not a passenger in the car but was standing in the school yard, testified that the car was going fast. She did not estimate the speed. However, she and other witnesses stated that the car traveled to a big tree located 119 feet past the point of impact before coming to a halt.

"The school yard is in full view of the road, and there were a number of children playing in the school yard. There were five in the immediate group in which witness Christine Smith was playing. She stated that she could see the road from the point at which she was playing, and that she could look up the road both ways. Witness Lois Owens named Charlie Kellam, Charles Little and Christine Smith as being the children other than herself and plaintiff Warnell Owens who were playing in the yard at the time of the accident.

"Christine Smith stated that she saw the Nosay car when it was up at the Air Field (this is to the west of the school) and it was the only car which she saw approaching the school from either direction. Lois Owens also saw the Nosay car coming, and likewise she saw only one automobile. Charlie Kellam (9 years of age) testified with reference to Warnell Owens' crossing the road:

" 'Q. Did you look up the road either way when Warnell started?

" 'A. Yes, sir.

" 'Q. What, if anything, did you see?

" 'A. A greenish colored car.

" 'Q. Where was the car?

" 'A. It was coming down the road.'

"Charlie Kellam did not mention seeing any other car.

"All of the occupants of the Nosay automobile testified that the plaintiff Warnell Owens came from in back of a moving automobile as it passed the Nosay car traveling in an opposite direction."

The plaintiff argues that upon these facts the verdict should stand. He called the defendant as an adverse witness. Defendant testified that he was eighteen years old on the date of the trial but was seventeen at the time of the accident, that he had been driving a car for two years, that the accident happened about three-thirty or a quarter to four in the afternoon, that he was on his way home with his school companions, Eugene Batten, Paul Taylor and Jerry Etheridge, and that he had been over this road possibly 20 or 25 times before but had never noticed the colored school and did not know it was there. He was driving a 1946 Ford two-door sedan, at a speed of 20 or 25 miles an hour at the time of the accident; approaching the point of accident he had an unobstructed view of from 400 to 500 feet, he did not see any children near the road and did not see any playing in the school yard; he met an automobile being driven in the opposite direction and as his car and the oncoming car passed, "this boy shot out from behind his (the oncoming car's) back bumper and hit me in the door on my side."

"Tell them what you say did happen?

"A. Just like I saw, the glasses were steaming up and I could not see on either side. I could see straight ahead. It was raining and I met this automobile. And just as this automobile got off against me, this boy shot out from behind his back bumper and hit me in the door on my side.

"Q. You say he shot out from behind his back bumper and hit you in the door?

"A. Yes, sir.

"Q. You had not seen him before that?

"A. Had not seen him before; had not seen him until he struck the door, got a glimpse of him."

There was no proof of the existence of any school zone signs on the road and Moscoe Taylor testified that he went to the scene of accident the next morning and no signs were there.

The three passengers in the car fully corroborate Nosay as to how the accident happened. They all state that the child ran from behind the approaching car into the door of the car.

J. D. Gregory, a body and fender repairman, testified that he repaired the car and that no part of the car was struck except "the left door panel below the door handle of the left door".

The plaintiff argues that "it is significant to note that nowhere in the record is there any testimony that at any time the

defendant, Manford Nosay, (1) blew his horn, (2) applied his brakes prior to the accident, or (3) attempted to swerve his car to the right, or took any other action to avoid striking Warnell Owens''. Under the facts of this case it was not incumbent upon the defendant to do any of these things. The overpowering evidence is that this child ran from behind a car, which hid him from defendant's view, into the side of defendant's automobile. The child was not seen and by the exercise of ordinary care could not have been seen until the instant he struck the car door. After the impact the undisputed evidence is that the defendant stopped his car within approximately 100 feet and immediately went back to the child, picked him up and rushed him to the doctor.

Prior to the plaintiff calling the defendant as an adverse witness there was no evidence before the court to show how the accident occurred.

Plaintiff's attorneys suggest that the ''steaming up'' of the side windows to the car possibly obstructed defendant's view of plaintiff. All the occupants of the car testified that they had a clear vision ahead through the windshield. There is no causal connection between the condition of the side windows and the accident. As was said by Mr. Justice Browning in *Bailey* v. *Fore,* 163 Va. 611, 618, 177 S. E. 100: ''It is within the knowledge of anyone who has looked through the windshield of an automobile, straight ahead, if any appreciable distance from a way or street, that he can see the entire street and whatever sizable objects there may be upon it. Such street, its sidewalks and the fronts of its properties are within the range of a normal person's vision.''

The plaintiff had not proven a case prior to calling the defendant to the stand, and the testimony of the defendant added no comfort to his dilemma.

As was said by Mr. Justice Spratley in *Boyd* v. *Brown,* 192 Va. 702, 708-709, 66 S. E. (2d) 559, 562-563:

''The attorneys for plaintiff must have realized that plaintiff could not recover upon his testimony alone. * * * They called the defendant, the only eye-witness, seeking some additional fact which would sustain the right of plaintiff to a recovery. They were, therefore, bound by such of his statements as were clear, logical, and reasonable, and not in conflict with evidence introduced on behalf of the plaintiff. As we said, under

a similar situation, in *Saunders* v. *Temple*, 154 Va. 714, 153 S. E. 691: 'The difficulty which the court has in taking their view of the record as a whole is the same difficulty which they had before they attempted to extract some incriminating evidence from the defendant as a witness. That obstacle to a recovery is the fundamental rule that the burden always rests upon the plaintiff to establish his case by the weight of the testimony. The defendant cannot be held responsible for the negligence charged upon a bare "perhaps".' "

█ Accidents in which children are involved invariably excite sympathy, but verdicts cannot be based upon sympathy. The defendant in this case has violated no duty imposed upon him by law. He was not an insurer of the child's safety.

For the reasons stated we are of the opinion that the evidence is insufficient to sustain the verdict and the judgment of the trial court is reversed, the verdict of the jury set aside, and final judgment here entered in favor of the defendant, Nosay.

This conclusion makes it unnecessary for us to consider the remaining assignment of error.

*Reversed and final judgment.*