## Richmond

J. L. READ, TRADING AS READ'S TRUCK LINE, AND RUPERT
A. ADAMS v. CHESTER DANIEL, JR. AN INFANT, ETC.

March 5, 1956.

Record No. 4464.

Present, All the Justices.

The opinion states the case.

*Breeden, Howard & MacMillan* and *Godwin & Godwin,* for
the plaintiffs in error.

*Woodward & Ferguson* and *M. Anderson Maxey,* for the de-
fendant in error.

Hudgins, C. J., delivered the opinion of the court.

Chester Daniel, Jr., an eight year old boy, instituted this action by his father and next friend against J. L. Read, owner, and Rupert A. Adams, operator, of a tractor-trailer truck to recover damages for personal injuries sustained when he came in contact with the side of the truck. To review a judgment for $5,000.00 entered on the verdict returned by the jury, defendants obtained this writ of error.

The only question presented is whether the evidence is sufficient to sustain the finding of the jury. Plaintiff, having obtained a verdict which was approved by the trial court, is entitled to have the testimony and all fair inference therefrom stated in the light most favorable to him. Governed by this rule the facts may be stated as follows:

The accident occurred about 2:30 P. M. on April 1, 1953, at the intersection of Seventh Street with Old Norfolk Road in Suffolk, Virginia. The following rough sketch or diagram indicates the locale of the accident and tends to clarify the references hereinafter made thereto.

Seventh Street does not cross the old Norfolk Road, but extends south from it. Old Norfolk Road extends east and west. It has a concrete pavement 18 feet wide with an asphalt shoulder 3 feet wide on each side, making an overall width of 24 feet. On Seventh Street, one block south of old Norfolk Road, is located a school building. Sixth Street, one block west of Seventh Street, and Eighth Street, one block east, are main thoroughfares for north and south-bound traffic. Between Eighth and Ninth Streets, on the north side of Old Norfolk Road, there is a sign reading "Caution—School Children Crossing". There is a similar sign between Fifth and Sixth Streets on the south. There is another sign indicating that the speed limit is 25 miles per hour.

Paul C. Hatfield, Jr., while operating a passenger bus east on Old Norfolk Road, saw plaintiff standing at the bus stop near a telephone pole on the southwest corner of its intersection with Seventh Street. Thinking that the plaintiff desired to take the bus he stopped and opened the front door for plaintiff to get aboard. Upon being informed that the plaintiff did not desire to ride he closed the door and started accross the intersection. As Hatfield started the bus he saw defendants' tractor-trailer truck close to the intersection and approaching from the east at an estimated speed of 25 miles per hour.

Fifth Street

Caution
School Children
Crossing

Sign

Sixth Street

Telephone pole

Bus Stop

Old Norfolk Road

18' concrete

3' asphalt

3' asphalt

Seventh Street

School

W

S

N

E

Eigth Street

Caution
School Children
Crossing

Sign

Ninth Street

When the back of the bus had moved about 25 feet east of the bus stop the operator heard the squeak of the brakes of defendants' truck and saw through his rear view mirror plaintiff turning over in the road. He drove his bus a little further on the shoulder, stopped and immediately went back to the scene. He noticed that the truck had stopped with its right tractor wheels over on the right shoulder, with plaintiff lying on the concrete a few feet to the rear of the trailer. Other witnesses for plaintiff stated the boy was 7 or 8 feet from the rear of the trailer, or 52 to 53 feet from the front of the tractor (the tractor-trailer being 45 feet long).

J. Frank Culpepper, Sheriff of Nansemond County, testified that he arrived on the scene a few minutes after the accident; that Adams (the operator of the truck) was on the ground trying to hold and quiet the boy, who was lying just a little west of the intersection, 6 feet from the north and 18 feet from the south side of the road. Plaintiff's legs "were badly hurt. The skin was pulled from the bone and the child was in a lot of pain". He immediately sent for an ambulance. Adams told him that he did not see plaintiff until he was in front of the truck and did not know what part of the truck hit him, but he "knew he hit the boy and he applied his brakes . . . and steered off the road". The witness then looked at the left front fender and saw where the boy apparently had hit it 1 foot or 1½ feet from the front, and that the truck had skidded approximately 30 feet before it was stopped.

Wade Council, the only eye witness other than the parties to the accident, called by defendants, testified that he was driving an oil truck east some distance behind the bus. When the accident happened he was approximately 150 feet from the rear of the bus and saw plaintiff run from behind it into the side of the truck and hit the left front fender back of the front wheel about 4 feet back from the front bumper. Plaintiff was looking at the oil truck all the time. He never turned his head and apparently never saw the truck until he had run into it.

The plaintiff testified that he knew it was dangerous to cross highways in front of oncoming traffic; that after the bus had moved off he saw the oil truck approaching and it did not stop, but he did not see defendants' truck; that he watched the oil truck all the time he was crossing the street and that he never saw defendants' truck until he went into the side of it. He was asked "You went into the side of it, didn't you?" A. "I was walking across and when I was

near about across I turned around and the front of the truck had knocked me down". He did not see it until after the impact.

Plaintiff was only eight years old and, therefore, presumed to be incapable of exercising proper care and caution for his own safety. This presumption as to children between the ages of 7 and 14 years is rebuttable, with the burden on defendants to overcome. The trial court, by an appropriate instruction, submitted this question to the jury, who by their verdict found that defendants had not borne the burden of proof and that contributory negligence was no defense to the accident. With contributory negligence eliminated, the decision of the case turns upon whether the evidence is sufficient to sustain the finding of the jury that the defendant driver was guilty of negligence.

There is no dispute as to the principles of law involved. The difficulty arises on the application of these principles to the facts. The duty of the operator of a motor vehicle owes to a child on or near a highway has been stated and restated in numerous cases. Many of these were reviewed or cited by Mr. Justice Spratley in *Boyd v. Brown*, 192 Va. 702, 66 S. E. (2d) 559. These principles may be summarized thus: If an operator of a motor vehicle sees or should have seen a child in or near the street it is his duty to take into consideration the fact that the child might act thoughtlessly and upon childish impulse, heedless of danger, put himself in a position of peril. Hence an operator must exercise that degree of care that a person of ordinary prudence would exercise under similar facts and circumstances to avoid injury to the child. In addition to the authorities cited, see *Harris v. Wright*, 172 Va. 67, 200 S. E. 597; 60 CJS, Motor Vehicles Section 396, pp. 963-974; Michie's Law of Automobiles, 2d Edition, 1942 Supplement, Section 96, p. 51; 2 Michie's Jurisprudence, Automobile Section 36, pp. 487-492.

On the other hand, as stated in *Boyd v. Brown*, 192 Va. at 709, ". . . . where it appeared that the driver did not see, and could not have seen, the child by the exercise of reasonable care, and the injured child had suddenly entered the street from behind an obstruction into the path of the oncoming vehicle and so close to the approaching car that the driver had no reasonable opportunity to avoid striking the child after seeing him, recoveries against the driver have been denied." *Clark v. Hodges*, 185 Va. 431, 39 S. E. (2d) 252, *Williams v. Blue Bird Cab Co.*, 189 Va. 402, 52 S. E. (2d) 868; *Nosay v. Owens*, 193 Va. 343, 68 S. E. (2d) 531.

Old Norfolk Road is straight for several blocks east and several blocks west of its intersection with Seventh Street. There were no other motor vehicles between the westbound truck of defendants and the bus to obstruct defendants' view. As Adams, the operator, approached the intersection he saw a passenger bus standing still. At that time the plaintiff was standing on the side of the street 2 or 3 feet south of the front door of the bus, which was only 1 or 1½ feet from the front bumper. As long as the bus was standing still it would not obstruct Adams' view of the plaintiff until the truck reached a point nearly opposite the bus. As the bus moved from a stopped position it would necessarily obstruct Adams' view of the plaintiff until the vehicles met and passed each other. However, the bus was an obstruction to Adams' view for only a moment as he testified that he saw the bus standing still and as it started, and the uncontradicted testimony is that the rear of the bus had gone only about 25 feet from the bus stop before plaintiff collided with the truck.

There is a conflict in the testimony as to whether a telephone pole standing at the corner partially obstructed Adams' view of the plaintiff, but even so a telephone pole of usual size is not sufficient obstruction to have prevented Adams from seeing plaintiff if he had been keeping a proper lookout.

The court properly instructed the jury that regardless of the maximum speed provided by law, it was the duty of the driver to drive at a speed that was reasonable under the circumstances.

The circumstances were that he was approaching a crossing used by school children. Not only did he pass the sign warning him of that fact, but he said he knew the crossing and that there was a school nearby. He testified that he was running around 20 to 25 miles an hour as he entered this intersection; that he saw the bus pulling away from the corner and that the accident happened when the front end of his truck was about even with the back end of the bus. His truck was 45 feet long and its cargo weighed 15 tons. He said that when the collision occurred he threw on all the brakes he had, yet according to his own statement he traveled close to 50 feet before he could stop. There were skidmarks on the pavement back of the trailer for a distance of 30 to 50 feet.

The driver not only had the duty to keep a lookout for children at this crossing, he had the duty also to keep his truck under control so as to avoid striking a child whom he saw or should have seen at-

tempting to cross. It was useless for him to keep a lookout and at the same time run his truck so he could not stop on seeing a child using the crossing. He knew children might be using this crossing. He was under a duty to look out for them and had the accompanying duty, one equally important, to drive at a speed that was reasonable in the light of this knowledge. Yet he drove at a speed which made it impossible for him to stop in less than 50 feet after he saw a child doing just what he should reasonably have expected.

Our conclusion is that from the facts stated reasonable persons may differ as to whether the operator of the truck was guilty of primary negligence and, therefore, the finding of the jury is conclusive upon the question. Judgment affirmed.

*Affirmed.*

Eggleston, Spratley and Whittle, JJ., dissenting.

Whittle, J., dissenting.

The majority opinion makes the defendant driver an insurer. There is no evidence upon which to predicate the finding that the driver failed to keep proper lookout, and this is the gravamen of plaintiff's case.

The evidence affirmatively shows that plaintiff was standing on the side of the street, hidden from view. Speculation and surmise must be employed to an extreme degree in order to find as a fact that the driver saw or by the exercise of reasonable care should have seen the plaintiff. Moreover, had the truck driver seen this eight year old boy standing at the bus stop, this would not have put him on notice that he would run across the street, without looking, and into the side of the truck.

The truck did not run into the plaintiff; the plaintiff ran into the truck. This is conceded. The driver of the oil truck, the only witness other than the plaintiff who saw the accident, testified that plaintiff was watching the approach of his (oil) truck at the time he collided with the side of defendants' truck. Plaintiff corroborated this when he testified that he did not see defendants' truck at the time he walked or ran into it; that he was looking at the approaching oil truck.

The fact that defendants' truck was in motion in no way con-

tributed to the acident except as it relates to the severity of the injuries. The accident would have occurred had the truck been standing still.

As I view the case, there is not a scintilla of evidence to prove negligence on the part of the defendant driver, the sole proximate cause of the accident being the act or conduct of the infant plaintiff.

I am of the opinion that the judgment should be reversed and final judgment entered for the defendants.

EGGLESTON and SPRATLEY, JJ., join in this dissent.