# Richmond

VIRGINIA TRANSIT COMPANY v. LOUIS RALPH SCHAIN, AN INFANT, ETC.

June 15, 1964.

Record No. 5701.

Present, Eggleston, C. J., and Buchanan, Whittle, Snead, I'Anson and Carrico, JJ.

*Ralph H. Ferrell, Jr.* and *Hugh V. White, Jr.* (*John Ritchie, Jr.; Hunton, Williams, Gay, Powell & Gibson,* on brief), for the plaintiff in error.

*Charles P. Rosner* (*Seymour Horwitz,* on brief), for the defendant in error.

CARRICO, J., delivered the opinion of the court.

Louis Ralph Schain, an infant six years of age, the plaintiff, secured a verdict and judgment in the sum of $53,000 against Virginia Transit Company, the defendant, for personal injuries suffered in an accident involving a bus owned by the defendant. The defendant was granted a writ of error.

The accident occurred at approximately 4:30 p. m. on June 7, 1960, on Lafayette Street, near its intersection with Cutshaw Avenue, in the city of Richmond. Lafayette Street is 40.2 feet wide and runs generally north and south. Cutshaw Avenue is 36 feet wide and runs generally east and west.

The point of impact is left in extreme doubt by the evidence, but according to the plaintiff's bill of particulars, "[t]he plaintiff was approximately Twenty-five (25) feet north of the north curb line of Cutshaw Avenue when he was first struck by the defendant's bus." The bus involved in the accident was northbound on Lafayette Street and was operated by the defendant's agent, Harold J. Iddings.

At the time of the accident, at least one automobile was parked on the east side of Lafayette Street, just north of the point where the northbound bus came to rest after the accident.

A sketch of the accident scene is here reproduced for better understanding of the location of the various points involved.

The evidence shows that shortly before the accident occurred, the plaintiff was playing with a friend in a yard on the northeast corner of the intersection. He then ran across Lafayette Street to a bus stop on the west side of the street where Lucy Boettcher, sixteen years of age, Betty Richardson, fifteen, and Mary Lee Chalkley, sixteen, were waiting for a southbound bus.

The plaintiff, who was approximately four feet tall, stood, for an unknown period of time, in the bus stop north of the girls either between an eight-inch elm tree and a utility pole, or north of the utility pole. One of the girls called the plaintiff's attention to the fact that he had dropped a golf ball while he was crossing the street. He started to leave the bus stop to go into the street to retrieve the ball but the girls warned him of the approach of two southbound automobiles. He waited, and then as soon as the second car passed, he ran into the street on an angle to the northeast.

A southbound bus, operated by Jimmie D. Hepler, was approaching the bus stop behind the two automobiles to pick up the would-be passengers waiting there. The plaintiff ran in front of that bus, causing the driver to have to stop to avoid striking him. The plaintiff hesitated and then, with his head down, continued to run across the street and, despite the screams of the girls in the bus stop, collided with the left side of the northbound bus. The plaintiff struck the bus at the rear of the left front wheel, 8 feet 10 inches from the front of the bus.

The plaintiff was thrown into the air and when he came to the

ground, his left leg was caught under the locked, skidding left rear wheel of the bus. The bus dragged the plaintiff for several feet, then ran over his leg and stopped. A 10-foot skid mark, containing flesh and blood, was left on the surface of the street. This was followed by a 6-inch "skip" space and then by a 2-foot skid mark.

Immediately after the accident, a spot of blood was found in the street 25 feet north of the north curb line of Cutshaw Avenue and 15 feet west of the east curb line of Lafayette Street. The bus, which was 34 feet 7 inches long, came to rest with its front 57 feet from the blood spot, turned at an angle with its front to the curb.

Iddings, the driver of the bus with which the plaintiff collided, testifying for the defendant, said that as he approached Cutshaw Avenue on Lafayette Street, he slowed his empty bus from 15 miles to 5 miles per hour; that he saw the two southbound automobiles, the first of which passed through the intersection; that when he saw the second automobile start to make a right turn, he looked at the bus stop, saw the girls standing there but did not see the plaintiff, saw the southbound bus coming in to make a stop, and then "looked back at the road"; that the way was clear when he was at the middle of Cutshaw Avenue; that he increased his speed to 15 miles per hour; that when the front of his bus was approximately 4 feet past the front of the southbound bus, he heard the latter's brakes applied; that he looked in his rearview mirror, saw the plaintiff about 1 foot west of the center of the street and 6 feet away from his bus running toward the bus with his head down; that he applied his brakes and turned his bus to the right in an attempt to avoid the plaintiff but the latter "run right" into the rear wheels on the left-hand side.

There are several assignments of error but, in the view we take of the case, it is necessary to consider only the assignment which presents this question:

Was the evidence sufficient to sustain the jury's verdict?

In answering this question, we accord the jury's verdict, approved by the trial court, the weight to which it is entitled. But, notwithstanding the respect which we pay it, we are of the opinion that it was not supported by sufficient evidence and, hence, must be set aside.

An examination of the many child-pedestrian accident cases which we have decided discloses a well-settled rule for determining the issue involved here. As expressed by Mr. Justice Spratley in *Boyd v. Brown*, 192 Va. 702, 709, 66 S. E. 2d 559:

"Stated generally, the rule is that if a driver sees, or should have seen, the presence of a child in or near the street that the law imposes upon him the duty to take into consideration that the child might act thoughtlessly and upon childish impulses, and requires him to exercise that degree of care that a person of ordinary prudence would exercise, under similar facts and circumstances, to avoid danger of injury to the child."

The defendant finds no quarrel with this rule, but argues that the evidence was insufficient to show that Iddings saw or should have seen the plaintiff in time to avoid striking him.

The plaintiff, on the other hand, contends that Iddings was not keeping a proper lookout and, as a result, failed to see the plaintiff in time to avoid the accident.

The plaintiff says that this contention is sustained by an inference, to be drawn from the evidence, that when the front of the north-bound bus was at the middle of Cutshaw Avenue, the plaintiff had then left the bus stop and was in the street in plain view of Iddings, the driver of the northbound bus, who had ample time to avoid the plaintiff.

The plaintiff says this is a proper inference to be drawn from the following evidence:

1. The testimony of the three girls in the bus stop to the effect that the plaintiff ran from the bus stop into the street as soon as the second of the two southbound cars had passed.

2. The testimony of Iddings that when the front of his bus was "approximately about the center" of the intersection "the way was clear."

3. A rough, diagonally curved line, drawn by Lucy Boettcher on a map exhibit showing her version of the plaintiff's course across Lafayette Street, from which the plaintiff has computed the point of impact to have been 68 feet from the middle of Cutshaw Avenue.

At the outset, it should be noted that the plaintiff relies on the inference just stated for the obvious reason that there was no direct testimony placing the plaintiff and the northbound bus in such relative positions, one to the other, that the bus driver came under a duty to see and avoid the plaintiff.

Admittedly, the plaintiff is entitled to draw an inference from the evidence. But it must be a fair inference, one which may reasonably be drawn. It must not be in derogation of, nor a stranger to, the evidence from which it allegedly emanates. *Boyd* v. *Brown, supra,*

192 Va., at p. 711; *Antonowich* v. *Home Life Ins. Co.*, 116 W. Va. 155, 179 S. E. 601, 603.

We are of opinion that the inference which the plaintiff seeks to draw does not meet these tests.

It is true that the three girls in the bus stop, all of whom testified for the plaintiff, did say that the plaintiff ran into the street as soon as the second southbound car had passed. But other uncontradicted testimony from each of them showed conclusively that the northbound bus could not then have been in a position with relation to the position of the plaintiff where Iddings could have avoided the accident.

These witnesses, at the crucial moment of time looking in a northeasterly direction, or away from Cutshaw Avenue, obviously absorbed in watching the plaintiff as he ran into and across the street, all said that they saw the northbound bus on the opposite side of Lafayette Street in their line of vision as they followed the path of the plaintiff into the side of the bus.

Lucy Boettcher testified:

"Q. Now, when the last southbound car went by, what did the little boy do?

"A. He ran out in the street.

"Q. Did he run out directly behind that car, the southbound automobile?

"A. Yes, sir, he ran right away.

"Q. And you looked up to see where he was running at that time, didn't you?

"A. Yes.

"Q. What did you see in front of you?

"A. Well, when I looked up, I saw the bus and he ran into it."

Betty Richardson gave the following testimony:

"Q. And you say he started off from the curb right after the southbound automobile had gone by, right behind it?

"A. Yes.

"Q. And right in front of the southbound bus?

"A. Yes.

"Q. And then you looked up, I suppose, and watched him the way he was running?

"A. Yes.

"Q. And what struck your eye between you and the other side of the street?

"A. Well, the bus was—I noticed the bus.

"Q. The northbound bus?

"A. Yes, when he started running.

"Q. As you looked across the street, you looked into the side of the northbound bus, didn't you?

"A. Yes."

.    .    .    .    .    .    .    .    .    .    .    .

"The Court: Let's get it straight this way. You previously testified that across the street from you you saw a bus. Now, I want to know two things, namely, what part of the bus was it you saw and at that moment where was the little boy?

"A. I saw the front portion, about the front half portion of the bus. I didn't look exactly at it because I was actually watching the boy.

"The Court: Where was he at that split second. . .?

"A. He was in the middle of the street."

Mary Lee Chalkley's testimony on this point was as follows:

"Q. I mean before, though, he passed out of the path of the southbound bus, you were watching that bus first?

"A. Yes.

"Q. And then you looked to the northbound bus after he got out into the street, approximately into the middle of the street?

"A. Yes, sir.

"Q. So the northbound bus was on the other side of the middle of the street, going north?

"A. Yes.

"Q. Isn't it fair to say that those two buses, the southbound bus and the northbound bus, were meeting each other in the street at a point north of where you were standing?

"A. Yes.

"Q. To your left? And the little boy, at that particular moment of time, was approximately in the middle of the street?

"A. Yes."

Evidence of the defendant, in the form of testimony by Hepler, the driver of the southbound bus, and by Sally Kincannon, a passenger on that bus, corroborated the testimony of the three girls in the bus stop that the plaintiff ran into the street immediately behind the second southbound automobile and directly in front of the southbound bus. These defense witnesses placed the front of the northbound bus even with or north of the front of the southbound bus at the time of the collision. This testimony, like that of the three girls

testifying for the plaintiff, leads to the one inescapable conclusion that the plaintiff darted into the street at a time when the northbound bus was so close as to foreclose effective action on the part of its driver to avoid the accident.

The inference for which the plaintiff contends is in derogation of all of this testimony. It seeks to gain sustenance from a fraction of Idding's testimony but ignores his other uncontradicted testimony as to what he saw and what actions he took, all of which showed that he was keeping a proper lookout. It seeks to warp the testimony that the plaintiff ran into the street directly behind the southbound automobile from its natural, reasonable effect that the plaintiff was then obscured by that automobile, into proof that he was then in plain view. It disregards the testimony of the girls in the bus stop which showed that the northbound bus was not where the plaintiff, by the inference he urges, would place the bus. It neglects to give any weight to the highly important fact that the plaintiff ran into the side of the bus, 8 feet 10 inches from its front. And, in now basing his claim on the inference that the accident happened 68 feet from the middle of Cutshaw Avenue, or 50 feet from the north curb line thereof, the plaintiff contradicts the allegation in his own bill of particulars that the point of impact was only 25 feet north of such curb line.

Under these circumstances, the tenuous inference sought to be drawn by the plaintiff, which he says would impose liability upon the defendant, must give way to the positive, uncontradicted evidence which exonerates the defendant from liability and shows that the inference is based upon speculation and conjecture. *Ward, Adm'r* v. *Lewis,* 197 Va. 811, 815, 91 S. E. 2d 393; *Bailey* v. *Fore,* 163 Va. 611, 617, 177 S. E. 100.

Each party, in an excellent brief, has cited numerous cases to assist us in reaching our decision. The defendant relies heavily on *Nosay* v. *Owens,* 193 Va. 343, 68 S. E. 2d 531, which lights the way for our decision here. In that case, the defendant, driving at a speed of 20 to 25 miles per hour, with his side windows "steamed up", with 400 to 500 feet of unobstructed view of a playground in front of a school bordering the highway by which he had passed 20 or 25 times before, struck a child that ran from the playground behind a car proceeding in the opposite direction from the defendant and into the side of the defendant's vehicle. In reversing a judgment in favor of the plaintiff and entering final judgment for the defendant,

Mr. Justice Whittle expressed the views of the court which are applicable here:

". . . [The] obstacle to a recovery is the fundamental rule that the burden always rests upon the plaintiff to establish his case by the weight of the testimony. The defendant cannot be held responsible for the negligence charged upon a bare 'perhaps'.

"Accidents in which children are involved invariably excite sympathy, but verdicts cannot be based upon sympathy. The defendant in this case has violated no duty imposed upon him by law. He was not an insurer of the child's safety." 193 Va., at p. 349.

Accordingly, the judgment of the trial court is reversed, the verdict of the jury is set aside and final judgment is here entered in favor of the defendant.

*Reversed and final judgment.*