# 𝔕𝔦𝔠𝔥𝔪𝔬𝔫𝔡

DONALD GRAY BURNETTE v. HARLEY L. McDONALD, ADMINISTRATOR, ETC.

June 14, 1965.

Record No. 5977.

Present, All the Justices.

*Edwin B. Meade* (*Meade, Tate & Meade,* on brief), for the plaintiff in error.

*W. Carrington Thompson,* for the defendant in error.

GORDON, J., delivered the opinion of the court.

The primary issue presented, in this action for wrongful death, is whether the testimony of a thirteen-year-old boy was sufficient to support the verdict and the judgment for the plaintiff. The plaintiff's case depended on his testimony. The defendant says that it was inconsistent and incredible, and therefore insufficient.

The defendant asks that the plaintiff's judgment for $16,000 be reversed and final judgment for the defendant be entered here. In the alternative, he seeks a reversal and remand because of the erroneous instruction to be discussed.

The plaintiff's decedent, Calvin Ray McDonald, who was four years old, died after he was struck by an automobile driven by Donald Gray Burnette, the defendant and appellant. The accident happened on State Highway 40, about one mile east of Gretna. The defendant was proceeding east on the highway, and Calvin and his older brother Dale (the thirteen-year-old witness mentioned in the opening paragraph, who was eleven years old at the time of the accident) were crossing the highway, from the north to the south side, when Calvin was struck by the defendant's automobile in its proper lane of travel. The width of the highway is approximately twenty feet.

Before the accident, Dale and other boys were playing hide-and-seek. Calvin, who had joined in the game, and his brother Dale were hiding behind bushes on the property of Dalton, who lived on the north side of the highway. The base for the game was behind a pickup truck, on the south side of the highway and in the trailer court where the McDonald family lived. Calvin and Dale were "called home"—the boy who was "it" could not find them—and

they were headed across the highway toward the base when the accident happened, resulting in Calvin's death.

The highway was dry at the time of the accident, and visibility was good. The point of impact was visible, to a driver of an automobile headed east (the direction in which the defendant was driving), beginning at a point in the highway near a white house, identified as Clay's house. This point was more than 500 feet from the point of impact.[1] When the driver was approximately 285 feet from the point of impact, the Dalton yard was visible, unless his vision was obstructed by vehicles on the highway. There was a 4.2 foot-high paling fence on the west boundary of the Dalton property (between his property and the Amos property to the west), which began at a point twelve and one-half feet from the northern edge of the highway and extended back in a northerly direction.

The speed limit at this section of the highway was fifty-five miles per hour, and the defendant was driving at approximately fifty miles per hour. Skid marks were visible after the accident; they began in the eastbound lane of travel and veered to the right, extending eighty-four feet to the rear wheels of the automobile, where it stopped after the accident (on or near the south shoulder of the highway). The defendant estimated that his automobile had traveled fifty feet of these eighty-four feet when Calvin was struck by the front of the automobile, on the left side.

According to the defendant, he passed a big van-trailer-truck headed west (the opposite direction) at a slow rate of speed, when he was at a point almost opposite the paling fence at the west boundary of the Dalton property; that "As soon as the truck went by, immediately I was close to the end of the truck. Then the boys ran out right behind the truck, right in front of me". The boys were at the edge of the hard surface, between fifteen and thirty feet ahead of his automobile, as estimated by the defendant, when he first saw them.

The boys, according to the defendant's witnesses, were about three feet apart and were not holding hands. Both were running, with the large boy (Dale) in front. Dale stopped near the center of the highway, and Calvin continued across the highway, "slanting toward the radio station [to the east]".

---

[1] The approximate distance between a point in the highway in front of Clay's house and the point of impact was 600 feet. According to the trooper's testimony, the point of impact was first visible, to a driver headed east, about fifty feet east of the front of Clay's house.

The accident happened under quite different circumstances, according to the evidence in chief of Dale McDonald. This testimony will be outlined in the next paragraph.

Dale testified that the truck passed in front of Calvin and him when he was about twenty-one feet from the north edge of the highway. When the boys had reached a ditch, about eight feet from the north edge of the highway, Dale looked to his left (east) and saw nothing and, then, to his right (west) and saw the defendant's automobile in front of Clay's house—more than 500 feet from the point of impact. The two boys then proceeded across the highway, holding hands. They stopped in the westbound lane, near the center line of the highway, when the defendant's automobile was "About in front of Mrs. Amos' mail box", approximately 165 feet away. They stopped to permit the defendant's automobile to pass in front of them. Suddenly, "Calvin [who was standing behind Dale] jerked loose of my hand and tried to make it across the road before the car did".

In view of the verdict for the plaintiff, we must accept Dale's testimony, as outlined in the preceding paragraph, unless inconsistent evidence given by him, or the incredibility of his evidence, renders it insufficient to support the verdict. Before considering his inconsistent statements, or the credibility of his evidence, we will refer to the legal principles that support the verdict and judgment for the plaintiff, based on the evidence outlined above, resolving all conflicts in the plaintiff's favor.

"If an operator of a motor vehicle sees or should have seen a child in or near the street it is his duty to take into consideration the fact that the child might act thoughtlessly and upon childish impulse, heedless of danger, put himself in a position of peril. Hence an operator must exercise that degree of care that a person of ordinary prudence would exercise under similar facts and circumstances to avoid injury to the child." *Read* v. *Daniel*, 197 Va. 853, 857, 91 S.E.2d 400, 404. The same rule is stated, and the Virginia cases reviewed, in *Boyd* v. *Brown*, 192 Va. 702, 66 S.E.2d 559.

Furthermore, Calvin McDonald, being four years old, was legally incapable of contributory negligence. *A.C.L.R. Co.* v. *Clements*, 184 Va. 656, 36 S.E.2d 553; see *Alexander* v. *Moore*, 205 Va. 870, 140 S.E.2d 645; *Grant* v. *Mays*, 204 Va. 41, 129 S.E.2d 10.

Under the evidence in this case, viewed most favorably to the plaintiff, the defendant should have seen Calvin and Dale McDonald, when the boys were standing in the highway and the defendant's

automobile was far from them; and the defendant should have taken into consideration the possibility that Calvin might act thoughtlessly and under childish impulse, as he did when he ran across the east-bound lane of traffic in front of the defendant's automobile. Therefore, the defendant was required to exercise the degree of care that a person of ordinary prudence would have exercised under similar facts and circumstancs to avoid injury to Calvin McDonald. The trial court properly submitted to the jury the question whether the defendant exercised that degree of care. See, in addition to *Read* v. *Daniel, supra, Saulsbury* v. *Williams,* 205 Va. 727, 139 S.E.2d 816; *Vought* v. *Jones,* 205 Va. 719, 139 S.E.2d 810; *Gabbard* v. *Knight,* 202 Va. 40, 116 S.E.2d 73; and *Portsmouth Transit Company* v. *Brickhouse,* 200 Va. 844, 108 S.E.2d 385. A different factual situation was presented by the plaintiff's evidence in *Boyd* v. *Brown, supra,* 192 Va. 702, 66 S.E.2d 559, where final judgment for the defendant was entered in this court.

The most recent Virginia case involving injury to an infant, *Virginia Transit Company* v. *Schain,* 205 Va. 373, 137 S.E.2d 22, has no bearing upon the decision in this case. There, the infant ran into the side of a bus, and, as stated in the opinion, "there was no direct testimony placing the plaintiff and the northbound bus in such relative positions, one to the other, that the bus driver came under a duty to see and avoid the plaintiff". (See 205 Va. 373, 377, 137 S.E.2d 22, 25.) The plaintiff attempted to support the verdict in his favor by an inference to be drawn from the evidence—an inference that the driver of the bus was not keeping a proper lookout. We found that such an inference was in derogation of the evidence in that case, and entered final judgment for the defendant. The plaintiff in the case now before us does not rely, however, upon an inference to be drawn from the evidence. Here, there was direct testimony to the effect that Calvin and Dale McDonald were in plain view of the defendant before the defendant arrived at the scene of the accident.

■ Turning to the inconsistencies in Dale McDonald's testimony, we find that certain of the inconsistent statements related to matters that had no connection with the accident or the cause of the accident, and were relevant only as bearing on the credibility of the witness. For example, Dale stated that Calvin and he walked across the highway to the Dalton yard and walked back across the highway, contradicting his earlier statement that they ran to the Dalton yard. Other inconsistent statements involved recollections or estimates of

points and distances, which could not reasonably be expected to be precise—e.g. the point at which Dale was standing when the truck passed in front of him (heading west), and the distance between him and the defendant's automobile (heading east) when he first saw it.

The most damaging inconsistent testimony given by Dale, when pressed on cross-examination, was to the effect that he entered the highway behind the truck and did not see the defendant's automobile until he was in the highway. But on direct examination, Dale said, in clear and positive terms, that the truck had passed and he had seen the defendant's automobile at a point more than 500 feet away, before he began to cross the highway; that he stopped near the center line of the highway, when the defendant's automobile was approximately 165 feet away. And Dale said on cross-examination (before he made the inconsistent statements) and on redirect examination that the truck had passed in front of him and he had seen the defendant's automobile when he was in the Dalton yard.

The inconsistent statements do not destroy the probative value of the other evidence given by Dale, and his evidence (together with the physical facts) amply supports the verdict in favor of the plaintiff. It was for the jury to determine which of the statements made by Dale should be believed. *Liberty Mut. Ins. Co.* v. *Tiller,* 189 Va. 544, 53 S.E.2d 814; *Atl. Greyhound Corp.* v. *Shelton,* 184 Va. 684, 36 S.E.2d 625; *Tignor* v. *Virginia E. & P. Co.,* 166 Va. 284, 184 S.E. 234; *Parsons* v. *Parker,* 160 Va. 810, 170 S.E. 1. The jury may have reasonably concluded that Dale was confused by the questions put to him on cross-examination. In any event, the jury had the right to reject the contradictory statements, and to accept Dale's other testimony as true.

We find no basis for concluding that Dale McDonald's evidence was incredible as a matter of law. The crucial factual issue was whether the defendant's automobile passed the truck, headed in the opposite direction, near the place where Calvin was struck; whether the boys ran out from behind the oncoming truck, when the defendant's automobile was near and he could not reasonably avoid the accident. Dale's evidence as a whole was clearly to the effect that the truck and automobile did not pass near the point of impact, and that the boys did not run out from behind the truck. Results of mathematical calculations, used by the defendant to prove that the two boys and the two vehicles could not have been at the precise places indicated by Dale in his testimony, do not render

his testimony incredible. See *Newman v. Dalton,* 206 Va. 119, 141 S.E.2d 677; *Sink* v. *Masterson,* 191 Va. 618, 61 S.E.2d 863.

The defendant assigns error to the giving of Instruction No. 2, which reads as follows:

### "INSTRUCTION NO. 2

"The Court instructs the jury, that if the jury believe from the evidence that before the accident the defendant, Donald Gray Burnette, saw, or in the exercise of reasonable care should have seen, Calvin Ray McDonald *in or near the highway ahead of him at or near the place where the accident occurred,* that alone was notice to him of the risk and danger of the situation, and he had no right to assume that a child of tender age would remain in a place of safety, but on the contrary was required, in the exercise of reasonable care, to anticipate that the child, acting upon some childish impulse, heedless of danger and incapable of exercising precaution expected of adults, might, through his thoughtlessness, expose himself in some way to danger of injury, and it became the duty of the defendant, Burnette, to increase his vigilance as he approached the child and to exercise that degree of care that a person of reasonable prudence would have exercised under similar facts and circumstances to avoid danger of injuring the child; and if the jury believe from the evidence that the defendant, Burnette, violated the foregoing duty and that such violation was a proximate cause of the accident, and death of the said Calvin Ray McDonald, then you shall return your verdict in favor of the plaintiff, Harley L. McDonald, Administrator of the estate of Calvin Ray McDonald, deceased." [Emphasis supplied]

The defendant conceded in his brief that this instruction "is correct· in a proper case"; it was taken almost verbatim from Doubles, Emroch and Merhige, *Virginia Jury Instructions, Virginia Practice I,* § 15.06. But he contends it is incorrect under the facts and circumstances of this case. The principal complaint is directed to the inclusion of the words *"near the highway"* and *"near the place where the accident occurred".* These words, the defendant says, permitted the jury to find for the plaintiff if the defendant saw, or should have seen, the McDonald boys in the Dalton yard as he approached the scene of the accident, even if he did not see them, or should not have seen them, when they entered the highway.

If the jury would otherwise have been confused by the giving of

Instruction No. 2—that is, could have interpreted the words complained of by the defendant as referring to seeing the children when they were in the Dalton yard, before they began their movements south across the highway—the jury should not have been so confused in view of Instruction No. 4, which is set forth in the footnote[2] and was given at the defendant's request. The words "in close proximity to" (which the defendant contends are the proper words) are used in Instruction No. 4, instead of "near", which is used in Instruction No. 2.[3] When Instructions Nos. 2 and 4 are read together, there should be no confusion.

Furthermore, we do not find Instruction No. 2 improper in this case. Instructions must be read in the light of the evidence presented in the case and if, when so read, they are not misleading, no prejudicial error is committed. See *Burks* v. *Webb, Administratrix,* 199 Va. 296, 99 S.E.2d 629; *Bourne* v. *Richardson,* 133 Va. 441, 113 S.E. 893; *Va. Ry. & P. Co.* v. *Smith & Hicks, Inc.,* 129 Va. 269, 105 S.E. 532. There was nothing in the evidence of this case to indicate that the court, by the language of Instruction No. 2, intended to refer to the defendant's opportunity to see the McDonald boys when they were hiding in the bushes in the Dalton yard.

Since we find no error in the judgment appealed from, it is

*Affirmed.*

[2] "INSTRUCTION NO. 4

"The Court instructs the jury, that the defendant was not an insurer of the safety of Calvin Ray McDonald and was not required to exercise that high degree of care owed for the safety of children unless he saw, or in the exercise of ordinary care should have seen, that Calvin Ray McDonald was *in close proximity* to Highway 40 as the defendant proceeded east along said highway.

"The Court further instructs the jury, that if they believe from the evidence that the defendant did not see, and by the exercise of ordinary care could not have seen, Calvin Ray McDonald *in close proximity to* said highway and that Calvin Ray McDonald suddenly entered the highway from behind an obstruction into the path of defendant's oncoming vehicle and so closely thereto that the defendant had no reasonable opportunity to avoid striking Calvin Ray McDonald after seeing him, and that the defendant was otherwise exercising ordinary care, then the jury shall return their verdict in favor of the defendant." [Emphasis supplied]

[3] Actually, as indicated by the definition of the adverb "near" in Webster's Third New International Dictionary, "near" and "in close proximity to" are almost alike in meaning or significance. See p. 1510.