# Richmond

## Martin S. Vought, An Infant, Who Sues by G. S. Vought, His Father and Next Friend v. Hubert E. Jones, Individually and Trading as Mr. Softee; Robert M. Smith, An Infant, and Willie Lee Duncan.

January 18, 1965.

Record No. 5818.

Present, Eggleston, C.J., and Spratley, Buchanan, Snead, l'Anson and Carrico, JJ.

720

*Kimber L. White (Bateman & White,* on brief), for the plaintiff in error.

*David N. Montague (Montague, Cumming, Watkins & Overton,* on brief), for Hubert E. Jones and Robert M. Smith, defendants in error.

*Lewis H. Hall (Larry M. Topping; Hall & Fox,* on brief), for Willie Lee Duncan, defendant in error.

Eggleston, C. J., delivered the opinion of the court.

On September 16, 1961, Hubert E. Jones, through Robert M. Smith, his agent and employee, operated a truck from which he sold and dispensed ice cream along the streets of the city of Newport News. On that day the truck was parked on the western side of Lucas road, headed south, and ice cream was being served to a number of children in the neighborhood. Martin S. Vought, aged five years and eleven months, who lived on the eastern side of Lucas road, went from his home across the road to the truck and purchased an ice-cream cone. On returning across the road toward his home

he was struck and injured by an automobile driven northwardly along Lucas road by Willie Lee Duncan.

Suing by his father and next friend, the boy filed a motion for judgment against Jones, the owner of the truck, Smith, its operator, and Duncan, the driver of the car which had struck him, alleging that they were jointly and severally guilty of negligence which proximately caused the accident and his injuries. Each defendant filed a denial of the allegation of negligence charged against him. There was a trial by a jury and at the conclusion of the plaintiff's evidence the lower court struck that evidence and entered a summary judgment for the defendants. We granted the plaintiff a writ of error.

In the plaintiff's assignments of error the main contention is that whether the defendants were guilty of negligence which proximately caused the accident was a jury question and that consequently the lower court erred in striking his evidence.

For some time prior to the accident the defendant, Jones, through his servant and employee, Smith, had operated the truck and sold ice cream therefrom along the streets of Newport News. The truck was a walk-in paneled vehicle, about 20 feet long, 7 feet wide, and 10 feet high. It was so arranged that its articles were dispensed to its customers through a door on the right-hand side. It was painted white, with a blue border around the bottom, and bore on the front a large sign reading "SLOW" and another reading "CAUTION." It was equipped with a type of music box which played tunes designed to give notice of its presence and to attract patrons, usually children.

On the morning of the accident the truck came to the neighborhood, proceeding northwardly along Lucas road. It sold ice cream to several children on its right, that is, along the eastern side of the road. It then continued northwardly for a short distance, turned around, and came south on Lucas road. When it reached a point opposite the Vought residence, located on the eastern side of the road, the driver was hailed by a number of children. The driver brought the truck to a stop on the western side of the road, headed south. The right wheels were on the dirt shoulder and the left wheels on the hard surface which was paved to a width of 18 feet. On the right-hand side of the truck and beyond the shoulder was a shallow ditch. Beyond this was a vacant field.

While the truck was stopped in this position the operator served four children who came from the east side of the road across to the truck and returned safely whence they had come.

The Vought child, who, as has been said, lived on the eastern side

of Lucas road opposite the place where the truck was parked, came across the road to the truck and purchased an ice-cream cone. He left the door on the right-hand side of the truck, proceeded to the rear of the vehicle, and then undertook to recross the road to his home. As he emerged from behind the truck he was struck by the left front of a car driven by Duncan in the opposite direction to that in which the truck was headed.

Duncan, called as an adverse witness, testified that as he proceeded north along Lucas road he observed the ice-cream truck parked on the road, about 150 yards ahead of him. He admitted that he knew the nature of the parked truck, its purpose and use, and that as he approached it he saw several children east of the road eating ice cream. He further testified that as he approached the parked vehicle he was driving at a speed of from 20 to 25 miles per hour and that when he actually passed the truck he was running about 15 to 20 miles per hour. The body of the truck obstructed his view of the boy until he emerged from behind that vehicle. Upon seeing the boy, Duncan said, he immediately applied his brakes, but was unable to avoid striking him.

There is evidence that the Duncan vehicle laid down skid marks on the pavement for a distance of from 30 to 33 feet. There is also evidence that the impact projected the child's body about 25 feet ahead of the Duncan car.

At the time of the accident the weather was clear, the visibility good, the road surface dry, and no other vehicles were involved. Smith testified that he stopped the truck "as far right as I could possibly get," and that because it was top-heavy it could not have been driven safely across the ditch into the field.

On behalf of the plaintiff it was contended at the trial below that the defendant, Smith, the driver of the ice-cream truck, was guilty of negligence in that his vehicle was stopped or parked on the road and ice cream was dispensed therefrom in violation of certain ordinances of the city of Newport News.

First, it is said that the manner in which the truck was stopped or parked on the road violated § 102 of the Motor Vehicle Code of the city. This section provides that "No vehicle shall be stopped in such manner as to impede or *render dangerous* the use of the street or highway by others, except in the case of an emergency as the result of an accident or mechanical breakdown, * * *."[1] (Emphasis added.)

[1] Cf., Code (Repl. Vol. 1958), § 46.1-248.

Since, as has been said, the truck was seven feet wide, it was stopped in such a way as to occupy a considerable portion of the 18-foot pavement. It practically obstructed the view which a motorist, proceeding northwardly as Duncan was, had of a person who might be on the west side of the road behind the truck. Indeed, Duncan testified that for this reason, as he approached the truck, he was unable to see the plaintiff who was behind it. The truck driver knew, or in the exercise of ordinary care should have known, that children would cross the road and gather around the truck for the purpose of buying his products. Since there was no emergency which caused the truck to be stopped or parked in this manner, we think it was for the jury to say whether this vehicle was "stopped in such manner as to * * * render dangerous the use of the street or highway by others" within the meaning of this ordinance. See *Saulsbury* v. *Williams, Adm'r*, 205 Va. 727, 139 S. E. 2d 816, decided today.

Next, the plaintiff contended that at the time of the accident the operator of the truck was serving ice cream in violation of § 30 of Ordinance No. 268 of the city, the pertinent portion of which provides: "It shall be unlawful for the proprietor, manager, or employee of any *store or other place of business* wherein ice cream, ices, soft drinks, or refreshments of like or similar character are sold, to receive, solicit, or *serve*, * * * from their place of business, any order for ice cream, ices, soft drinks, or refreshments of like or similar character, from or to any person upon the further side from his *storeroom* of that portion of the street used for vehicular travel." (Emphasis added.)

Clearly, we think, this ordinance was not applicable here. This truck was not a "store" or "storeroom" within its purview. Nor was the ordinance designed to apply to a mobile vending vehicle from which merchandise is usually dispensed to customers on both sides of the street.

The defendants, Jones and Smith, argue that even if Smith was guilty of negligence in stopping or parking the truck on the road in violation of § 102 of the Motor Vehicle Code of the city, yet such was not a proximate cause of the accident; that the real and proximate cause was the act or conduct of the defendant, Duncan, in so operating his car as not to avoid striking the plaintiff. In support of that contention they rely upon *Hubbard* v. *Murray, Adm'r*, 173 Va. 448, 3 S. E. 2d 397, and *Roanoke Railway & Electric Co.* v. *Whitner*, 173 Va. 253, 3 S. E. 2d 169.

In the *Hubbard* case, in violation of a statute, a bus had stopped on the traveled portion of the highway to discharge a passenger. As it pulled away from its parked position it was sideswiped by an overtaking truck which veered to its left and collided with another vehicle driven by Murray who was killed in the latter collision. We held that the improper manner in which the bus was stopped on the highway was merely a circumstance, or a remote cause, and that the negligence of the driver of the truck was the intervening and sole proximate cause, of the collision in which Murray was killed. This was so because the later negligence of the truck driver superseded the prior negligence of the driver of the bus.

In the *Roanoke Railway* case the plaintiff, a guest in the defendant's car, was injured when that car ran into the rear of a bus which, in violation of statute, was halted on the highway for the purpose of loading and discharging passengers. We held that the prior negligence of the driver of the bus in unlawfully stopping on the highway "had ceased to operate" and that the intervening negligence of the driver of the car was the sole proximate cause of the accident. 173 Va. at 260, 3 S. E. 2d at 172.

In the present case the manner in which the truck was stopped or parked on the road had not ceased to operate or been superseded by the negligence, if any, of Duncan, but continued down to the time of the accident and proximately contributed thereto. The negligence, if any, of Duncan, the driver of the car, was not a superseding but a concurring cause. See *Scott* v. *Simms, Adm'r*, 188 Va. 808, 817, 818, 51 S. E. 2d 250, 253, 254; *Crist* v. *Fitzgerald*, 189 Va. 109, 119, 52 S. E. 2d 145, 149; *Birtcherd Dairy, Inc.* v. *Edwards, Adm'r*, 197 Va. 830, 833, 91 S. E. 2d 421, 423; 13 Mich. Jur., Negligence, § 23, p. 533 *ff*. See also, *Saulsbury* v. *Williams, Adm'r*, *supra*.

■ Moreover, we agree with the plaintiff that the evidence presented a jury question as to whether the operator of the truck violated the duties and obligations which he owed the infant plaintiff under common-law principles, and if so, whether such proximately caused the accident.

Under elementary principles it was the duty of the defendant operator of the truck to exercise ordinary care to provide a reasonably safe place for this child who was his business invitee. To that end, he was required to exercise ordinary care to select a position on the road where he could stop his vehicle and dispense his merchandise to the plaintiff without exposing him to danger. The jury had the right

to say whether the defendant discharged this obligation; whether, in the exercise of ordinary care, the truck should have been stopped in such a manner as to invite or induce the plaintiff and other children to cross the road in order to reach the truck and purchase the products which were there offered for sale. Here vehicles were permitted to travel along the road at 35 miles per hour, and the operator of the truck was chargeable with notice of this. In this situation, it was for the jury to say whether, in the exercise of ordinary care, the operator of the truck should have turned his vehicle around and parked on the eastern side of the road in order to serve the plaintiff and other intended customers there.

Similarly, we think that the evidence presented a jury question whether the defendant, Duncan, was guilty of negligence which was a proximate cause of the accident.

As we pointed out in *Saulsbury* v. *Williams, Adm'r, supra*, it is the duty of the operator of a motor vehicle, when approaching another vehicle standing in the highway, to observe whether there are any persons about such vehicle and to exercise ordinary or reasonable care to avoid injuring them. See also, 60 C. J. S., Motor Vehicles, § 384-b, p. 941, and cases there collected; *Paul* v. *Garman*, 310 Ill. App. 447, 34 N. E. 2d 884, 890.

It is well settled that the duty and liability of the driver of an automobile to adults and children are measured by different standards. Ordinary care toward an adult under certain circumstances may be gross negligence toward a child under the same conditions. The driver must increase his exertion to avoid danger to children he may see, or by the exercise of reasonable care should see, at or near a street or highway. Moreover, the conduct of a child is not measured by the same rules which govern that of an adult, because a child does not have the knowledge or experience to know or estimate correctly the probable consequence of his acts in a given situation. See *Gabbard* v. *Knight*, 202 Va. 40, 46, 116 S. E. 2d 73, 77, and cases there cited. See also, 2 Mich. Jur., Automobiles, § 37, p. 487 *ff*.

Here the defendant, Duncan, admitted that as he approached the scene where the accident later occurred he saw the ice-cream truck and recognized its use and purpose. He observed children eating ice cream just across the road from the truck. It is a matter of common knowledge that children of tender years patronize and gather around such a facility. Thus this defendant was confronted with a situation which might prove dangerous to these children. It

became his duty to increase his vigilance, proceed at a reasonable speed, have his car under reasonable control, and bring it to a stop if necessary. Whether, under the circumstances, he complied with his duties and responsibilities was for the jury.

The fact that the Duncan car skidded for a distance of from 30 to 33 feet before it was brought to a stop, and the fact that the body of the child was thrown a distance of 25 feet ahead of that car, would support the inference that Duncan was not proceeding at a reasonable speed under the circumstances and did not have his car under control.

For these reasons we hold that the lower court erred in striking the plaintiff's evidence. Accordingly, the judgment is reversed and the case remanded for a new trial as to all of the defendants in accordance with the principles here stated.

*Reversed and remanded.*