# Richmond

P. L. SAULSBURY v. EDDIE RAY WILLIAMS, ADMINISTRATOR OF THE ESTATE OF EDDIE RAY WILLIAMS, JR., DECEASED, AND ERNEST PINKSTON.

January 18, 1965.

Record No. 5822.

Present, Eggleston, C. J., and Buchanan, Snead, I'Anson and Carrico, JJ.

*Andrew P. Miller (Jackson S. White, Jr.; Penn, Stuart & Miller,* on brief), for the plaintiff in error.

*Leslie M. Mullins (Greear, Bowen, Mullins, Winston, Pippin & Sturgill,* on brief), for the defendants in error.

EGGLESTON, C. J., delivered the opinion of the court.

Eddie Ray Williams, Jr., aged three and one-half years, while crossing the road in the village of Derby in Wise county, was struck and killed by an automobile driven by Ernest Pinkston. At the time the little boy was crossing the road from the northern to the southern side, returning from a truck which was parked on the northern side of the road and from which its owner and operator, P. L. Saulsbury, was selling and dispensing groceries, soft drinks and candy. The child's administrator filed a motion for judgment against Saulsbury and Pinkston to recover damages for his wrongful death. The motion alleged that the death of the decedent was caused by the joint and several negligence of the two defendants in the operation of their respective vehicles. Each defendant filed grounds of defense denying the allegations of negligence charged against him.

There was a trial by a jury and at the conclusion of all of the evidence the lower court, over the objection of the plaintiff and Saulsbury, struck the plaintiff's evidence against Pinkston and entered a judgment in his favor, on the ground that it failed to show that Pinkston was guilty of any negligence which was a proximate cause of the accident. It overruled Saulsbury's motion to strike on the same ground and the jury rendered a verdict against him in the sum of $18,000. Subsequently Saulsbury's motion to set aside the verdict

against him was overruled and judgment was entered thereon. We granted Saulsbury a writ of error.

Saulsbury assigns error to the action of the lower court in striking the plaintiff's evidence as to Pinkston and in refusing to set aside the verdict against him, Saulsbury, and entering judgment thereon. However, in his brief Saulsbury does not question the sufficiency of the evidence to sustain the verdict and judgment against him. His position is that under the evidence it was for the jury and not the court to decide whether he or Pinkston was, or both were, guilty of negligence which proximately caused the accident; that in relieving Pinkston from liability the court "prejudiced Saulsbury's posture before the jury and rendered its verdict [against him] invalid" and "improperly destroyed Saulsbury's right of contribution against Pinkston." He asks that the judgment be reversed and the case remanded for a new trial "on all issues" as to him and Pinkston.

For some time prior to February 6, 1963, the date of the accident, Saulsbury had customarily driven a paneled truck five days a week along the road leading through the village of Derby and sold and dispensed groceries, soft drinks, etc., to customers along the way. The truck had an enclosed body, with a door on the right side, opposite the driver's seat, through which customers were admitted to the storeroom in the interior. The overall width of the vehicle was 7 feet and 2¼ inches.

The road leading through the village runs approximately east and west, is paved to a width of 17 feet, with a narrow dirt shoulder on each side. On the day of the accident Saulsbury stopped the truck on the northern side of the road, headed west, opposite the residence of the Williams family situated on the south side of the road. There is a conflict in the evidence as to just where the truck was stopped. Mrs. Virginia Williams, the mother of the child, testified that it was stopped with "all four of the wheels" on the hard surface of the road. Saulsbury testified that the left wheels were on the paved surface and the right wheels on the dirt shoulder, "off as far as you could get." He admitted that about 150 feet ahead there was a space where the vehicle could have been stopped entirely off of the hard surface.

While the truck was stopped in this manner several customers came to buy articles there offered for sale. The first of these was Mrs. Williams and her child, Eddie. They entered the truck where Mrs. Williams purchased a carton of soft drinks. In the meantime Mrs. Ann Boyd and her young son stood on the ground on the right-

hand side of the truck preparatory to entering it. After Mrs. Williams had made her purchase and was waiting for her change, her little boy, who had purchased a box of candy, got out of the truck, went around the front of it, and started across the road. As he emerged from the front of the truck he was struck by the right front of the Pinkston car which had overtaken and was passing along the left side of the truck.

Pinkston testified that he lived at Derby and was familiar with Saulsbury's custom of visiting the village and selling merchandise from the truck; that as he approached the truck from its rear he recognized the vehicle and its purpose; that he saw Mrs. Boyd standing on the ground on the right-hand side of the truck, but did not see Mrs. Williams, who was inside the vehicle as he approached, nor did he see the Williams child in front of the truck. He further said that he pulled his car into the left lane and passed along the left side of the truck; that as the front of his car reached the front of the truck the child "dashed out" in the path of his car and was struck.

Although Pinkston said that he was proceeding at only about 20 miles per hour and applied his brakes and brought his car to a stop within 17 feet, he was unable to avoid striking the child. He admitted that he did not sound his horn as he approached and passed the truck. He gave as his reason for not doing so the fact that some people in the vicinity worked at night, slept during the day, and the sound of his horn might awaken and annoy them.

Mrs. Boyd testified that as she stood near the door of the truck she saw the child leave the vehicle and start around the front; that hearing the approach of the Pinkston car she "yelled" a warning to the child who failed to stop. Mrs. Williams, the mother, testified that she heard Mrs. Boyd's warning and that she, too, "hollered" to him just as he was "fixing to start across the road." However, the warnings were unheard or unheeded. Mrs. Williams said that after the impact the child's body lay in the road about 20 feet ahead of the truck.

The evidence is undisputed that at the time of the accident there were no other vehicles passing or parked in the vicinity.

At the trial the principal charge of negligence against Saulsbury was that the manner in which he had stopped his truck on the road violated Code (Repl. Vol. 1958), § 46.1-248. The pertinent portion of this section reads: "No vehicle shall be stopped in such manner as to impede or render dangerous the use of the highway

by others, except in the case of an emergency as the result of an accident or mechanical breakdown, * * * ."

The contention of the plaintiff was that the manner in which this truck was parked on the highway rendered "dangerous the use of the highway by others" within the meaning of this statute. By appropriate instructions this issue was submitted to the jury and resolved in favor of the plaintiff. In refusing to set aside the verdict against Saulsbury, the lower court held that there was sufficient evidence to sustain this finding. As has been said, there is evidence that the truck was parked with all four wheels on the pavement, despite the fact that just 50 yards ahead it could have been parked entirely off of the hard surface. Saulsbury knew, or should have known, that the manner in which his truck was parked partly blocked the road and obstructed the view of the highway for motorists following his vehicle. Indeed, Saulsbury does not contend that the evidence was insufficient to sustain the jury's finding that he was negligent in the manner in which he stopped his truck on the highway and that this was a proximate cause of the accident. See *Vought v. Jones,* 205 Va. 719, 139 S. E. 2d 810, decided today.

We do not agree with the lower court that, as a matter of law, the defendant, Pinkston, was free of negligence which was a proximate cause of the accident. On the contrary, we think that under the evidence adduced this was a question for the jury. "It is the duty of the operator of a motor vehicle, when approaching another vehicle standing in the highway, to observe whether there are any persons about such vehicle, and to exercise ordinary or reasonable care to avoid injuring any such person." 60 C. J. S., Motor Vehicles, § 384-b, p. 941, and cases there collected. See also, *Paul v. Garman,* 310 Ill. App. 447, 34 N. E. 2d 884, 890.

According to Pinkston's own testimony the Saulsbury truck was in plain view ahead of him as he approached. He recognized the vehicle and knew that it was used by Saulsbury for the purpose of peddling groceries and other articles to customers along the road and that it was stopped there for that purpose on this occasion. He admitted that he "expected there would be people around the truck." Indeed, he admitted seeing one woman, who turned out to be Mrs. Boyd, near the vehicle. Under such circumstances, it was his duty to have his car under control, to reduce his speed if necessary, and exercise a reasonable lookout for pedestrians who might be near the parked vehicle, obscured from his view, and might attempt to cross

the road ahead of him. Whether he performed his duty in this respect was for the jury. See *Vought* v. *Jones, supra.*

Although Pinkston said that the truck was parked in such a manner as to leave him a narrow passageway and that he was unable to see whether there were pedestrians hidden from his view by the truck, he did not sound his horn before undertaking to pass that vehicle.

In the lower court it was urged on behalf of the plaintiff and the defendant, Saulsbury, that the failure of Pinkston to sound his horn, under the circumstances, was in violation of Code (Repl. Vol. 1958), § 46.1-209. Saulsbury makes the same contention before us. That section reads: "The driver of an overtaking motor vehicle when traveling outside of a business or residence district[1] shall give audible warning with his horn or other warning device before passing or attempting to pass a vehicle proceeding in the same direction."

The lower court seems to have held that Pinkston's failure to sound his horn, under the stated circumstances, was not a violation of that section because the car was not at the time passing or attempting to pass a vehicle "proceeding in the same direction" within the meaning of that section, nor was the statute designed for the benefit of pedestrians.

We find it unnecessary to decide here whether that was a proper interpretation of the statute. As we view the case, it was for the jury to say whether, irrespective of the statute, it was Pinkston's duty, in the exercise of ordinary care, to have sounded his horn to warn pedestrians, including the plaintiff's intestate, who might be in the vicinity of the truck, of his intended passing of that vehicle.

As is said in Blashfield Cyclopedia of Automobile Law and Practice, Perm. Ed., Vol. 2A, § 1251, p. 138, "Even in the absence of statute or ordinance specifically requiring a warning, a motorist nevertheless should give warning to avoid possible danger to pedestrians if the exercise of reasonable care should so require." See also, *Lawson* v. *Fordyce*, 237 Iowa 28, 21 N. W. 2d 69, 88; *Lane* v. *Ludeman*, 131 Conn. 112, 38 A. 2d 178, 180; *Cox* v. *Reynolds*, Mo. App., 18 S. W. 2d 575, 577; *Healy* v. *Moore*, 108 Vt. 324, 187 A. 679, 685; *Izor* v. *Brigham*, 111 Vt. 438, 17 A. 2d 236, 238; *Olsen* v. *Peerless Laundry*, 111 Wash. 660, 191 P. 756, 758; 61 C. J. S., Motor Vehicles, § 526(4), pp. 438, 439.

Similarly, it was for the jury to say whether the failure of Pinkston to sound his horn was a proximate cause of the accident, that is,

---

[1] It was stipulated by the parties that the place of the accident is "outside the business or residential district" of the town.

whether an adequate warning by him of his approach would have prevented the child from crossing the road or would have enabled his mother or Mrs. Boyd to have prevented his doing so.

For these reasons we hold that the lower court erred in striking the plaintiff's evidence as to Pinkston and in not submitting to the jury the question of his liability and that of Saulsbury for the death of the plaintiff's decedent.

However, this does not require that the judgment against Saulsbury be reversed and a new trial awarded against both him and Pinkston on all of the issues, as Saulsbury asks. The record shows that the plaintiff vigorously opposed the striking of the evidence as to Pinkston and urged that his liability, as well as that of Saulsbury, be submitted to the jury. Since, as has been said, the evidence fully sustains the finding of the jury, approved by the lower court, of Saulsbury's liability, the plaintiff should not be deprived of his judgment against Saulsbury. Nor should Saulsbury be deprived of his right to contribution from Pinkston.

In *Norfolk & Portsmouth Belt Line R. Co.* v. *Parker*, 152 Va. 484, 504, 505, 147 S. E. 461, and *Richmond Coca-Cola Bottling Works, Inc.* v. *Andrews*, 173 Va. 240, 250, 251, 3 S. E. 2d 419, 423, on the respective records there before us, we entered a final judgment enforcing the right of contribution under Code, § 8-627, in favor of one joint tort-feasor who had been held liable under the verdict of the jury against the other joint tort-feasor who had been improperly exonerated by the verdict. In the present case we think the issue of contribution should be determined in the lower court. See *Schools* v. *Walker*, 187 Va. 619, 47 S. E. 2d 418.

Consequently, the judgment against Saulsbury is affirmed and that in favor of Pinkston is reversed. The case is remanded to the lower court to determine whether Saulsbury is entitled to contribution from Pinkston. (Code, § 8-627.) In such subsequent proceeding the pleadings should be appropriately amended and the issue submitted to a jury unless both parties waive a trial by jury.

The appellant, Saulsbury, having substantially prevailed on this appeal, will recover of the appellee, Pinkston, his costs. Code (Repl. Vol. 1964), § 14.1-181.

*Affirmed in part; reversed in part, and remanded.*