# Staunton

## ANTHONY CALVIN ELLIOTT, ET AL. v. MILDRED BURGESS LEWIS, ADMINISTRATRIX, ETC.

September 9, 1966.

Record No. 6240.

Present, All the Justices.

*John W. Carter* and *Coleman B. Yeatts* for the plaintiffs in error.

*W. Carrington Thompson* for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

Howard Ray Lewis, twenty-two years old, was killed when the automobile which he had been driving eastwardly was struck by an automobile driven westwardly by Anthony Calvin Elliott. Lewis' administratrix brought this action against Elliott and Billy Wade Adams on the ground that their concurring negligence was the proximate cause of Lewis' death. A jury returned a verdict for the plaintiff for $12,000, the court entered judgment thereon, and the defendants have appealed. Their main contention is that Lewis was guilty of contributory negligence as a matter of law.

The accident occurred about midnight of December 1, 1964, a few miles east of Danville on secondary highway No. 729, which runs generally east and west. At the place of accident the pavement was nineteen feet wide with a dirt shoulder two and one-half feet wide on the south, or Lewis', side of the road, sloping about one and one-half feet into a ditch, on the other side of which was an embankment. A short distance to the east, from which Elliott came, was a knoll or rise in the road which obstructed vision from meeting cars until they were within fifty to sixty feet of the crest.

A State trooper arrived at the scene soon after the accident. He said the road was dry and the night clear and cold. He found the Lewis car off the pavement and up against the bank on Lewis' side of the road, with the Elliott car beside it facing east, opposite the way it had come. It had made 115 feet of skidmarks, 58 feet of

which were on the east side of the knoll in a straight line to the crest, thence at an angle toward the Lewis car, which was then stopped on its side of the road, 57 feet to the point of impact. From that point the Lewis car had been forced 30 feet backwards into the bank. The damage to the Lewis car was on its left front section and to the Elliott car on its right side near the door. Elliott told the trooper he was running between fifty-five and sixty miles an hour, but there was other evidence that he was going seventy miles or more.

Lewis and Elliott had attended a dance in Danville that night. Elliott had taken his girl to her home and was returning to his home in Danville. Lewis, driving east, was also going home. On his way he overtook and passed a car driven by defendant Adams, in which on the front seat were Linda Wiles and Bobby Hawker, all of whom had also attended the dance. About a quarter of a mile from the place of accident they saw the Lewis car off the road. Adams said it was in a field trying to get back into the road, but Linda said it was then on a little dirt road on a curve and as they passed Lewis he "looked like he had been around the front and he was getting in." She looked back and saw him coming slowly into the road and following them.

As they proceeded eastwardly beyond the knoll they realized that Lewis had ceased following them and they turned around and started back because they thought something was wrong with his car and they might be of help. As they came near the knoll they could see lights of a car on the other side and when they got to the top they saw the Lewis car stopped on its right-hand side of road with its right wheels on the shoulder. Lewis was then out of the car and under it between the front wheels working on it.

The two defendants differ widely as to the sequence of events. Elliott testified that as he came up the knoll approaching the scene of the accident he could see lights on the other side and thought he was meeting a car coming on his left-hand side of the road. When he came over the crest of the knoll he saw the taillights of the Adams car sitting beside the Lewis car and blocking his way. When he put on his brakes, he said, his car skidded sideways and he could hear the Adams car getting out of the way. He was so close to it, he said, he could discern the color of it. The Lewis car did not move and Elliott never saw Lewis.

Adams and the other two occupants of his car testified, on the

other hand, that the Adams car did not stop at the Lewis vehicle; that they knew a car was coming on behind them and they only slowed down a little as they approached the Lewis car and Adams called out to Lewis as they passed on by, but received no answer. They were, they said, some four to six car lengths away when they heard tires screaming and then the crash. They stopped and went back and found Lewis lying unconscious in the ditch. The Elliott car made no contact with the Adams car.

■ Defendants do not question the sufficiency of the evidence to support the jury's finding that they were both guilty of negligence. They say in their brief that the question is simply whether a motorist "whose vehicle is mechanically unimpaired" may stop his vehicle on the travel portion of the highway as described and "crawl under his car" without being guilty of contributory negligence. There was testimony that Lewis earlier in the evening had been drinking, but other evidence was ample to support a conclusion that he was not under the influence of alcohol at the time of the accident.

The evidence does not show that the Lewis car was "mechanically unimpaired." The only evidence on that point is to the effect that Lewis was having trouble of some kind before he reached the place of accident. Adams and his companions thought there was something wrong with Lewis' car. When they came back to see what the trouble was they found Lewis working under the front of the car. The witness Linda Wiles observed that "He wouldn't have been under it working if there hadn't been something wrong with it." The jury could have reached the same conclusion. There was evidence that the lights and heater were on and the motor was running, but that did not exclude trouble from other sources, such as steering difficulties.

■ Section 46.1-248 of the Code, 1958 Repl. Vol., 1964 Cum. Supp., provides that "No vehicle shall be stopped in such manner as to impede or render dangerous the use of the highway by others, except in the case of an emergency as the result of an accident or mechanical breakdown, * *."

The defendants argue that Lewis violated this provision and was therefore guilty of negligence as a matter of law.

There is nothing in the evidence that rules out the possibility that Lewis stopped where he did because of an emergency, something that made it impossible or unsafe to operate the vehicle. Vio-

lation of the statute would be negligence, and if shown to exist and to be a contributing cause of the accident, the plaintiff was not entitled to recover. But contributory negligence is not presumed, and a defendant who relies on it has the burden of proving that it existed and that it was a proximate cause of the accident. *Whitfield* v. *Dunn*, 202 Va. 472, 117 S. E. 2d 710; *Doss* v. *Martin*, 205 Va. 306, 136 S. E. 2d 854.

The prohibition of § 46.1-248 is not absolute. It does not make it unlawful to stop in an emergency resulting from an accident or mechanical breakdown; nor is the statute violated unless the stopping impedes or renders dangerous the use of the highway by others. *Davis, Adm'x* v. *Scarborough*, 199 Va. 100, 97 S. E. 2d 731. In that case and in others we held that whether the statute was violated and whether the violation contributed to the collision was an issue of fact for determination by the jury. *Bonich* v. *Waite*, 194 Va. 374, 73 S. E. 2d 389; *Birtcherd Dairy* v. *Edwards, Adm'r*, 197 Va. 830, 91 S. E. 2d 421; *Baxley* v. *Fischer*, 204 Va. 792, 134 S. E. 2d 291; *Vought* v. *Jones*, 205 Va. 719, 139 S. E. 2d 810; *Saulsbury* v. *Williams, Adm'r*, 205 Va. 727, 139 S. E. 2d 816; *Cowles* v. *Zahn*, 206 Va. 743, 146 S. E. 2d 200.

When the collision occurred the Lewis car was stopped on its side of the road, with its right wheels on the shoulder, according to evidence that the jury could accept. Why it stopped is not known. It is a legitimate inference, not controverted by any evidence, that something was wrong with it and that Lewis was trying to correct the trouble. Defendants argue that Lewis was guilty of negligence as a matter of law when he got out of his car and got under it as described. We do not agree. Where the car was stopped there was no room for it on the shoulder and the ditch was only two and one-half feet from the edge of the pavement. This was a country road and it was midnight, with no help immediately available. The statute directs that in case of a breakdown the vehicle should be removed as soon as practicable. Lewis had a right to presume that the driver of an approaching car would keep a reasonable lookout, *Bonich* v. *Waite, supra*, and the north half of the road, Elliott's half, was unobstructed. Under the circumstances shown by the evidence it was a jury question as to whether Lewis was guilty of negligence which was a contributing cause of the accident.

Defendants complain of an instruction which told the jury

that if they believed from the evidence that the manner in which Lewis stopped his car did not impede or render dangerous the use of the highway by others, then he did not violate his duty with respect to stopping. The statute prohibits a stopping which impedes or renders dangerous the use of the highway by others, except as stated. The instruction was in the language of the statute. Lewis was entitled to have the question of whether he impeded or rendered dangerous the use of the highway by others determined with reference to the lawful use of the highway by others. Whether he impeded or rendered dangerous the use of the highway by the defendants under the evidence in this case was a factual question which was properly referred to the jury for decision.

We find no reversible error and the judgment appealed from is accordingly

*Affirmed.*