**Edith A. MILLS, Plaintiff,**

v.

**Pearl M. MEALEY et al., Defendants.**

**No. 66–C–9–R.**

United States District Court
W. D. Virginia,
Roanoke Division.

Sept. 7, 1967.

Ralph Masinter, Masinter & Masinter, Roanoke, Va., for plaintiff.

William B. Poff, Talfourd H. Kemper, Woods, Rogers, Muse, Walker & Thornton, Roanoke, Va., for defendants.

## OPINION AND JUDGMENT

MICHIE, District Judge.

This case, founded on diversity of citizenship and amount in controversy, arises from a collision which occurred between a parked automobile in which

plaintiff was a rear seat passenger and a tractor-trailer. Following a three day trial, the jury returned a verdict for defendants. Plaintiff has moved for a new trial contending principally that the verdict was clearly erroneous, contrary to the weight of the evidence and that the court committed error by instructing the jury on the question of plaintiff's contributory negligence. A 232 page transcript of the trial proceedings was typed and forwarded to the parties concerned, after which extensive briefs were prepared and submitted to the Court.

At approximately 2:00 A.M. on April 9, 1964 plaintiff, Edith A. Mills, was sitting or lying in the rear seat of an automobile which was stranded near the top of a mountain on U. S. Route 100 not far from Pearisburg, Virginia. The car, a 1956 Ford owned by James Clifford Albert, had run out of gas around midnight and Arlin Wesley Montgomery, one of the automobile's four occupants, had made a trip to Pearisburg where he obtained gasoline with which to refill the car. After his return to the parked automobile, while he was attempting to pour the gasoline into the tank, a tractor-trailer traveling north and up the mountain and driven by Cleveland Ray Whorley approached the rear of the Albert vehicle. At a point where the highway is two-lane and approximately 23 feet wide with solid lines separating the lanes, the tractor-trailer collided with the rear of the Albert automobile. The plaintiff was seriously injured.

After reading the briefs submitted, one easily can conclude that, other than the foregoing facts, there are few details about this accident which are not in dispute. There is considerable evidence, most of which was given by the four occupants of the Albert car, indicating that the parking lights of the automobile were on at the time of the accident. On the other hand, Whorley, the driver of the tractor-trailer, said that he saw no lights on the Albert vehicle just before the accident occurred and Trooper Lee stated that, upon investigation following the accident, he found the parking lights switch in an off position. There is some conflict as to whether the road was straight or whether it was curved at the point of the collision. Discrepancy exists as to the visibility available to the driver of the tractor-trailer when he rounded the curve just before the Albert automobile was struck. The plaintiff contends that it was a "clear" night while defendants submit that it was "dark." One of the few things that the parties do agree upon is that it was cold.

At the time of the collision a car owned by a man named Perkins was parked on or near the highway with its front bumper almost touching the grille of the Albert vehicle. There is also disputed evidence about whether or not his headlights were shining at the time of the accident.

One of the points which would seem very important, if not pivotal, to a trier of fact deals with whether or not the Albert automobile was on the paved portion of Route 100. Plaintiff's evidence indicates that it was not on the paved portion of the highway when the automobile was struck. Defendants' evidence suggests that the car was on the paved portion of the road. It is, of course, possible that, though the wheels were not on the pavement, a portion of the automobile overhung the pavement.

Defendant Whorley says that he was driving about 40 miles per hour at the time of the collision. He also said that he had limited visibility, that the accident occurred on a curve, that he did not see the Albert vehicle until it was too late to avoid the impact, and that a tractor-trailer traveling in the opposite direction passed him or had just finished passing him at the moment of collision.

In ruling on a motion for a new trial a trial judge does not apply the same standard that he would to a motion for a directed verdict. When deciding whether or not a new trial should be granted he has a somewhat wider latitude. The Fourth Circuit has said he

is to exercise his own independent judgment after weighing *all* the evidence and any other pertinent factors. After so doing, if he decides that the verdict is against the clear weight of the evidence or would result in a miscarriage of justice, then he should grant the motion for a new trial. Williams v. Nichols, 266 F. 2d 389, 393 (4th Cir. 1959); McCracken v. Richmond, Fredericksburg & Potomac R. Co., 240 F.2d 484, 488 (4th Cir. 1957). This same standard is followed in other circuits. See, ·e. ·g., Simpson v. Skelly Oil Company, 371 F.2d 563, 570 (9th Cir. 1967).

■ Nevertheless, in spite of having the authority to set aside a verdict and grant a new trial, a district court should not forget the importance of the province of the jury. In recent years the tendency has been to enlarge the sphere of the jury, especially in personal injury tort cases. Nuckoles v. F. W. Woolworth Company, 372 F.2d 286, 289 (4th Cir. 1967). This means, among other things, that where a jury resolves conflicting evidence, a federal district court should not grant a new trial merely because the court may not have found the facts as the jury did, merely because the court disagrees with the results if a reasonable basis exists in support of the jury's conclusion. Aetna Casualty & Surety Co. v. Yeatts, 122 F.2d 350 (4th Cir. 1941); Porter v. American Export Lines, 261 F.Supp. 625 (D.C.Pa.1966).

■ Furthermore, when ruling on a motion for a new trial, a court must keep in mind the mandates of Rule 61 of the Federal Rules of Civil Procedure. This rule requires that a court disregard ,any error or defect in the proceeding which does not affect the substantial rights of the parties. Though a person is entitled to a ˙fair trial, he is not entitled to a perfect one. He does not have a right to a new trial merely because harmless error may have been committed.

Most of the arguments presented by plaintiff, particularly those with respect to the alleged negligence of the tractor-trailer driver and the court's giving of general instructions dealing with contributory negligence, cannot prevail should there be a reasonable basis in the evidence for a finding that plaintiff was contributorily negligent. A closer look at the facts of this case reveals that such a basis for a finding by the jury of contributory negligence does exist and that therefore the verdict for the defendants is not unreasonable, not clearly against the weight of the evidence, nor a miscarriage of justice.

■ As defendant points out, the most crucial conflict with respect to the issue of contributory negligence relates to the location of the Albert car. Even if Whorley were speeding and not keeping a proper lookout, if the Albert vehicle were parked partially on the highway and under the circumstances plaintiff was negligent not to have removed herself from the car, she should be barred from recovery. This is a matter of "hornbook" law.

> A guest who remains in a motor vehicle which has stopped or stalled on the traveled portion of a highway, * * * may be held guilty of contributory negligence which will bar recovery for injuries sustained when the vehicle is struck by another vehicle or train.

8 Am.Jur.2d, Automobiles and Highway Traffic, § 547, p. 106 (1963).

Plaintiff's evidence concerning the parked car's location consists mainly of the testimony of Mrs. Simpson, who was driving the Albert car when it ran out of gas, and that of Mr. Montgomery, the front seat passenger. Mrs. Simpson said the car was at least a foot off the paved portion of the highway. This ˎstatement was confirmed by Mr. Montgomery. These two were the only occupants who observed the outside of the car prior to the accident. According to plaintiff, she asked Montgomery as he was getting out of the car in order to get gasoline, whether or not the car was off the road. He informed her that it was.

As further support for the proposition that the car was entirely off the paved

portion of the highway, plaintiff argues that since the road was heavily traveled and since the accident did not occur until the car had been stranded for almost two hours, it is reasonable to assume that the vehicle was not in any blocking the northbound lane of travel. Had it not been off the paved portion, submits plaintiff, the automobile would have been hit much sooner by some other vehicle.

On the other hand, Whorley testified that at the moment before impact, he saw the Albert vehicle partially blocking his lane of travel on the paved portion of the highway. Trooper Lee gave credibility to this testimony when he stated that upon investigation immediately after the accident he found a mark extending three feet onto the pavement and leading in a northeasterly direction to a point beneath the wheels of the Albert vehicle. It was the type mark that would have been made by a wheel on the Albert car if the car were pushed or dragged or scraped along the cement. Trooper Lee said it was not an ordinary skid mark. As one might expect, the trooper could not state positively that the scrape mark was or was not made by the Albert vehicle.

Additional evidence from which one could infer that the Albert vehicle was on the highway pavement can be found in Trooper Lee's discovery of both the gasoline cap from the Albert car and some spilled gasoline on the highway pavement.

From the foregoing facts, the Court cannot say that it was unreasonable for the jury to conclude that the Albert vehicle was partially on the highway. Not only was there tangible evidence such as the scrape mark, the gasoline and the gasoline cap which might indicate that the car had been on the pavement, there was testimony from Whorley which, if believed, would lead one to a similar conclusion. Certainly one of the primary functions of a jury is to weigh conflicting testimony and determine what is credible and what is not. It is not within the purview of this court

in ruling on a motion for a new trial to usurp this function. Viewing the evidence presented as a whole, I cannot say the jury was unreasonable to reject the testimony of the occupants of the Albert vehicle who said the car was off the highway and accept the testimony of Whorley who said the opposite.

Assuming that the Albert vehicle was on the paved portion of U. S. Route 100, the next question presented is whether, under the circumstances, the jury was unreasonable in concluding that plaintiff was negligent in not getting out of the car or having it moved and that this negligence contributed to or caused plaintiff's injury. As stated by one writer:

> Contributory negligence barring the plaintiff is conduct which the man of ordinary prudence, under like circumstances, should reasonably anticipate would result in his own injury. It is nothing more than the failure of the plaintiff to exercise ordinary care for his own safety, which, together with the negligence of another, brings about injury to him.

13 Michie's Jur., Negligence, § 24, p. 537.

When the above test is applied to the facts of the instant case, it becomes apparent that the evidence presented does support a reasonable finding that plaintiff was guilty of contributory negligence. Continuing with the assumption that the Albert vehicle was on or over a portion of the northbound lane of travel of the highway, from the record, one can make the following assessment of the circumstances. At 2:00 A.M. drivers approaching the stranded automobile were without the benefit of daylight to aid visibility. The highway was only two-lane and less than 23 feet wide. Drivers approaching the rear of the Albert vehicle were unable to see it until they rounded a fairly sharp curve south of the stranded car. There was considerable traffic on the highway for that time of day. Under these conditions, it was certainly foreseeable that the Albert vehicle would be struck from the rear and its occupants seriously injured.

Plaintiff might argue that she had a right to rely on the statement made by Montgomery to the effect that the car was off the highway. But the very reason for which our system of justice creates a twelve-man jury is to have the jury decide whether such reliance was reasonable. It would not have been any great hardship for the plaintiff to get out of the car and see for herself whether the vehicle was on the highway, whether visibility was poor, whether the highway was wide or narrow and whether other conditions existed that would lead to the car's being hit by a passing vehicle. If she had, instead of remaining in the car and falling asleep, gotten outside and taken the trouble to ascertain the existing situation, she easily could have done something to avoid the accident. Perhaps she could have had the driver of the Albert car move it further off the road with its remaining few drops of gas or, if that solution were not feasible, she could have remained outside the car and urged the other occupants to do the same. If the jury chose to find that the plaintiff by remaining in the parked vehicle failed to exercise the degree of care which an ordinary reasonably prudent person would use, the jury was not being unreasonable in doing so.

It follows that, if there were sufficient evidence to support a finding of contributory negligence, as I have just concluded there is, it was proper to send this issue to members of the jury and give them a general instruction on contributory negligence. Under the same reasoning, plaintiff would not be entitled to an instruction which stated to the jury that, as a matter of law, the plaintiff was not guilty of contributory negligence.

Among plaintiff's many contentions in support of her motion for a new trial is the one that evidence of the alcohol consumed by occupants of the Albert vehicle should have been excluded because there was no causal connection between the drinking and the accident. I find this argument to be without merit. The evidence admitted was not prejudicial and whether there was or was not a causal connection between the drinking and the accident was for the jury to decide. Admission of this evidence was not error. Even if it were, it was harmless error.

Another position taken by plaintiff is that the court erred in not instructing the jury on the doctrine of last clear chance. She makes such an argument in spite of its being inconsistent with her earlier contention that she was not guilty of contributory negligence as a matter of law. Nevertheless, regardless of the inconsistency of her argument, it must fall in the instant case because the doctrine of last clear chance as defined in Greear v. Noland Co., 197 Va. 233, 89 S.E.2d 49 (1955) is inapplicable to the facts presented. For the doctrine to operate as a limitation on the common law rule of contributory negligence and allow a negligent plaintiff to recover, a defendant must have *seen* the plaintiff *and realized* or had the opportunity to realize plaintiff's peril in time to avoid the accident. There is no evidence whatsoever indicating that defendant Whorley saw the Albert vehicle in time to avoid hitting it.

Plaintiff complained about admission of what she categorizes as hearsay evidence; yet she fails to show how or why such admission is anything other than harmless error. I fail to see how the admission in this case of statements made to Trooper Lee at the hospital sometime after the accident had occurred can come close to affecting the substantial rights of the parties. Error, if any exists, in the admission of these statements is harmless and therefore does not entitle plaintiff to a new trial.

Plaintiff cites Vaught v. Jones, 205 Va. 719, 139 S.E.2d 810 (1965) and says that the case holds, among other things, that:

[T]he improper manner in which the bus was stopped on the highway was merely a circumstance, or a remote cause, and that the negligence of the driver of the truck was the intervening and sole proximate cause of the col-

lision in which Murray was killed. This was so because the later negligence of the truck driver superseded the prior negligence of the driver of the bus.

Vaught v. Jones contains no such holding. In fact, the court reached an opposite conclusion with respect to intervening cause. The court said at 724, 139 S.E.2d at 814:

> In the present case the manner in which the truck was stopped or parked on the road had not ceased to operate or been superseded by the negligence, if any, of Duncan, but continued down to the time of the accident and proximately contributed thereto. The negligence, if any, of Duncan, the driver of the car, was not a superseding but a concurring cause.

Certainly in the instant case it is not unreasonable to say that the action of plaintiff Mills in remaining in Albert's parked car also had not ceased to operate or been superseded by the negligence, if any, of Whorley, but continued down to the time of the accident and proximately contributed thereto.

 Up to this point, the court's denial of plaintiff's motion for a new trial has rested on a conclusion that the jury reasonably could have found for the defendants by deciding that plaintiff was guilty of contributory negligence. In the alternative, the jury could have reached the same result by deciding that defendant Whorley was not guilty of negligence. There is sufficient evidence in the record to support a logical conclusion founded on this latter basis.

 It is beyond gainsay that the onus is upon plaintiff to show by a preponderance of the evidence that Whorley was negligent. It also goes without saying that the mere fact that the accident happened cannot be taken as evidence that Whorley did not exercise proper care in the operation of his vehicle.

In an effort to show that Whorley was speeding, plaintiff argues that the statistics recorded in his log book indicate that his speed must have been in excess of 40

miles per hour. This contention is illogical for no matter what his average speed for the trip, Whorley could have been going quite slowly at the time of the accident. Moreover, there is credible testimony other than Whorley's that he was traveling at a rate of less than 40 miles per hour shortly before the impact occurred.

At the time of the accident there were two tractor-trailers traveling in a southerly direction somewhere near the point that the Albert car was parked. Their location relative to Whorley's tractor-trailer when the latter struck the Albert car is in dispute. However, whether they had both passed Whorley or whether one had passed him and the other had not or whether one was directly opposite him, it is certainly understandable that their presence would make Whorley more reluctant to swing his truck wide to the left and cross double lines in order to avoid hitting the Albert car. It may well be that the jury decided that the presence of these tractor-trailers moving in the opposite direction obviated any possibility of Whorley's avoiding the accident.

In sum, plaintiff has argued that Whorley was speeding but has not clearly proved it. She has argued that Whorley had good visibility, perhaps as much as 350 feet, but has not proved exactly what that visibility would be at night with the lights on Whorley's tractor-trailer dimmed. Plaintiff has attempted to show that the parking lights of the Albert vehicle were on and therefore would have given Whorley an opportunity to see the automobile from a considerable distance, but again, is faced with evidence from which one reasonably could infer that the lights were not on immediately prior to the accident. Under these circumstances, as already stated, the court cannot say that a jury would have been unreasonable or clearly erroneous to conclude that the accident was not caused by any fault or lack of care on defendant's part.

Incidentally, plaintiff has argued quite vehemently that the real basis for the jury's conclusion was a moral one, that the jury found against the plaintiff be-

cause she was out at 2:00 A.M. in the morning with a man other than her husband, having left her infant children at home. Though this hypothesis is interesting, the court may not go outside of the record to engage in such speculation when there is evidence in the record to support the result ultimately reached by the jury.

In accordance with the foregoing, it is Ordered that plaintiff's motion for a new trial is hereby denied. This order is final.